COMMONWEALTH vs. KEVIN HICKS.

Suffolk. January 5, 1978. — May 17, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Practice, Criminal*, Recalling witness, Charge to jury. *Evidence*, Exculpatory, Relevancy and materiality. *Witness*, Recalling.

At a criminal trial, the judge did not err in refusing to allow defense counsel to recall a witness, whom he had previously cross-examined, for the purpose of impeaching the witness by a prior inconsistent statement where the defense counsel had deliberately refrained from impeaching the witness on cross-examination. [275-277]

A defendant at a criminal trial was not erroneously deprived of the opportunity to offer an innocent explanation for his possession of seemingly incriminating evidence by the judge's exclusion of two general questions put by defense counsel where no offer of proof was made and where the exclusion did not bar a more precise inquiry tending to show a noncriminal intent. [277-278]

The judge at a criminal trial did not abuse his discretion in allowing the prosecutor to question the defendant as to whether he was in the company of a certain individual, described at the ensuing bench conference as "the other defendant," on the night the crime was committed. [278]

The judge at a criminal trial did not err in his instructions to the jury with respect to the difference between murder in the first and murder in the second degree. [279-280]

INDICTMENTS found and returned in the Superior Court on July 14, 1976.

The cases were tried before *Ford*, J.

*Susan J. Baronoff* for the defendant.

*Terrence D. Garmey*, Legal Assistant to the District Attorney (*Michael J. Traft*, Special Assistant District Attorney, with him) for the Commonwealth.

HENNESSEY, C.J.   These are appeals pursuant to G. L. c. 278, §§ 33A-33G, from the defendant's convictions on indictments charging him with murder in the first degree,

armed robbery, and unlawfully carrying a firearm. We affirm the convictions.

A short time before midnight on September 28, 1975, security guard Philip Landick drove Shannon Harrell, the assistant manager of a McDonald's restaurant to a bank on Temple Place in Boston to make a night deposit for McDonald's. Before Harrell had alighted from the security guard's marked car, two men approached the car on the driver's side. Shots were exchanged between one of the men and Landick. The other man opened the car door on the passenger's side, took a bag of money from the front seat, and fled. Harrell also fled, back to McDonald's. Arriving at the scene moments later, police found the security guard dead of a gunshot wound and the defendant lying near the car bleeding. About six inches to one foot from the defendant's outstretched hand was a pistol. Partially underneath the defendant was a shoulder bag, and, nearby, police found various items later used in evidence to link the defendant to the shooting.

The Commonwealth presented a circumstantial case, primarily through the testimony of three eyewitnesses, none of whom could positively identify the defendant as the gunman who had shot Landick. The Commonwealth also presented police testimony and various exhibits tending to corroborate details observed by the eyewitnesses and link the defendant to the shooting. The defendant maintained that he had been merely a bystander. No issue is raised on appeal as to the sufficiency of the evidence supporting the verdict, and we are satisfied that the defendant's motion for directed verdicts was properly denied. We therefore proceed directly to a consideration of the four assigned errors, detailing the evidence in the case only in so far as it becomes relevant to the arguments advanced by the defendant.

1. The defendant first maintains that the judge erred in refusing to allow the defendant to recall the witness Mark Conley (Conley), whom defense counsel had cross-examined previously. Counsel had deliberately refrained from impeaching Conley at that time, although it appears that

Conley may have made a prior inconsistent statement concerning his opportunity to observe the incident in question.

Conley was called as a witness for the prosecution. He testified that on the night of the shooting he was driving through downtown Boston and had stopped his car at a traffic light on Washington Street at the intersection of Temple Place. He heard two noises that sounded like firecrackers exploding, followed within a few seconds by a large bang. Looking down Temple Place, Conley saw one man fall backward near the driver's side of a car and another man run to the passenger side of the car, reach in, and run away. Conley indicated that he could not identify the defendant as someone he had seen on Temple Place, but that he had not noticed anyone on the street other than the two men he had mentioned. Defense counsel cross-examined Conley, inquiring into Conley's opportunity to observe, but decided not to impeach Conley, because, as he later explained on the record, Conley had not identified the defendant.

After the Commonwealth had rested, the defendant transmitted a note to the trial judge objecting to his lawyer's decision not to use the inconsistent statement. In deference to the defendant's wishes, defense counsel moved to recall Conley. The prosecution raised no objection, except to the delay that was expected to ensue, since Conley could not be reached that day. The judge denied the motion, and the defendant, who has new counsel for these appeals, argues that the judge's decision constitutes reversible error. There is no merit in this contention.

Whether or not a witness should be recalled in a criminal case is a matter entrusted to the sound discretion of the trial judge. *Commonwealth* v. *Williams*, 5 Mass. App. Ct. 809, 809-810 (1977). See *Perrott* v. *Leahy*, 302 Mass 318, 322-323 (1939). See also *United States* v. *Ritchie*, 128 F.2d 798 (3d Cir. 1942). Courts have found an abuse of discretion where the refusal to permit recall of a witness unreasonably deprives the defendant of an opportunity to present newly

discovered information material to the defense,[1] but those cases are not applicable here, where, because of the relative unimportance of the supposed inconsistencies, defense counsel made a tactical choice not to impeach the witness. Moreover, we can conceive of no benefit that would arise from impeaching this witness; on the contrary, defense counsel could have justifiably concluded that this evidence might hurt more than help. In the circumstances, the defendant has no cause to fault the representation afforded by trial counsel. See *United States* v. *Moore*, 554 F.2d 1086, 1091-1092 (D.C. Cir. 1976); ABA Standards Relating to the Defense Function § 5.2(b) (Approved Draft 1971).

2. The defendant took the stand at trial, and he now argues that the judge erroneously deprived him of the opportunity to offer an innocent explanation for his possession of a knotted woman's nylon stocking found in his possession at the time of the shooting. The stocking had been put in evidence by the prosecution during the testimony of a police witness. There was no error.

In all, defense counsel asked the defendant three questions pertaining to the stocking. After establishing that the defendant might have had a stocking in his possession, counsel asked, "What would you have done with that [the stocking]?" The judge sustained an objection. Counsel then asked, "If you had it, where would it have been on your person?" The judge again sustained an objection, and defense counsel moved on to another line of inquiry. No offer of proof was made, and it appears from the context that the objections went to the form of the questions, not to the substance of the inquiry. There was no error.

A criminal defendant may not be prevented from explaining seemingly incriminating evidence offered by the prosecution. See, e.g., *Commonwealth* v. *Fatalo*, 345 Mass. 85,

---

[1] See *United States* v. *Keller*, 523 F.2d 1009 (9th Cir. 1975); *State* v. *Carns*, 136 Mont. 126 (1959); *State* v. *Taylor*, 21 Utah 2d 425 (1968). See also *Hahn* v. *State*, 58 So. 2d 188 (Fla. 1952); *Sipero* v. *State*, 41 Wis. 2d 390 (1969).

86-88 (1962); *Commonwealth* v. *Smith*, 329 Mass. 477, 479-481 (1952); *Commonwealth* v. *Goldberg*, 212 Mass. 88, 91 (1912). In each of those cases, the trial judge precluded relevant testimony even after defense counsel had made an offer of proof. Here, however, the judge did not bar any line of testimony. On the contrary, counsel appears to have abandoned all inquiry into the matter of the stocking. The exclusion of counsel's general questions did not bar more precise inquiry tending to show a noncriminal intent. *Commonwealth* v. *Subilosky*, 352 Mass. 153, 167 (1967).

3. The prosecutor's cross-examination of the defendant included an inquiry into whether the defendant had been in the company of one Robert Thomas on the night in question. Defense counsel objected at the first reference to Robert Thomas, and at a bench conference that ensued the prosecutor represented that Thomas was "the other defendant" and that the relationship between Thomas and Hicks was material to the case. When cross-examination resumed, Hicks denied having been with Robert Thomas on the night of the shooting.

The defendant argues that evidence concerning Robert Thomas had minimal probative value which was far outweighed by its prejudicial effect on his case. On the contrary, the evidence was highly relevant to the defendant's credibility. Hicks had previously testified that he had spent the evening alone in his apartment and that he was walking by himself on Temple Place at the time of the shooting. It is axiomatic that a defendant subjects himself to cross-examination when he chooses to testify on his own behalf. E.g., *Raffel* v. *United States*, 271 U.S. 494, 496-497 (1926). The scope of that cross-examination lies within the sound discretion of the trial judge, and there was no abuse in this case. The defendant might have been entitled to a limiting instruction, if one had been requested, in order to guard against an inference of guilt by association, cf. *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965), but the evidence clearly was admissible on the issue for which it was offered.

4. The defendant argues that the judge's charge on the difference between murder in the first and murder in the second degree was inadequate and that this court therefore should reduce the defendant's conviction of murder in the first degree to a conviction for murder in the second degree. See G. L. c. 278, § 33E. We hold that there was no error in the charge.

The judge instructed as to the common law definition of murder, then charged that, in addition to determining whether murder had been committed, the jury had the duty to determine the degree. The judge then reviewed the three kinds of murder in the first degree, see G. L. c. 265, § 1, and instructed that all other murder was murder in the second degree. The most detailed portion of the charge concerned the felony-murder rule, and the judge instructed that, "if a murder is committed in the commission or attempted commission of the crime of armed robbery, and you find that beyond a reasonable doubt, then the offense would be first degree murder and not second degree murder, and you should so find." The judge did not elaborate on the concept of deliberate premeditation, although the evidence warranted a verdict of murder in the first degree on that theory if the jury found that the defendant had fired two shots with deliberate premeditation. The judge emphasized that, "[i]f you find there was a murder, but you are uncertain as to whether or not it is first degree or second degree murder, the defendant must have the benefit of that doubt and the verdict must then be for murder in the second degree and not murder in the first degree." When the jury retired, they took into the jury room a form reminding them of the three possible murder verdicts they might return — not guilty, guilty of murder in the second degree, and guilty of murder in the first degree.

The defendant asserts that the charge was erroneous, arguing that it conveyed the impression that, although a conviction of murder in the second degree was a theoretical possibility, the jury should return a murder conviction, if at all, only on the felony-murder theory. This contention is

based largely on a single sentence in the charge where the judge stated that lengthy instructions on the difference between murder in the first degree and murder in the second degree were unnecessary. We are concerned only with the impression left with the jury by the charge as a whole, *Commonwealth* v. *Ramey*, 368 Mass. 109, 114 (1975); *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972), and we are satisfied that the judge instructed the jury clearly and correctly as to the possible verdicts they might return.

5. We have examined the entire record in accordance with our duties under G. L. c. 278, § 33E, and we observe nothing which in justice indicates that we should modify the result reached by the jury.

*Judgments affirmed.*