COMMONWEALTH vs. GERALD M. HILL.

Suffolk. September 13, 1982. — November 12, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Delinquent Child. Jurisdiction,* Delinquent child, Transfer
hearing. *Practice, Criminal,* Transfer hearing, Juvenile delinquency
proceedings, Required finding, Instructions to jury.

A Juvenile Court judge's conclusion that a defendant was "not amenable
to rehabilitation as a juvenile," and should be tried as an adult for
murder, was in accord with the overwhelming evidence at a transfer
hearing. [621-623]
Where a criminal defendant challenged the sufficiency of the evidence
against him solely on the ground of its believability his motion for a
directed verdict was properly denied. [623-624]
At a murder trial the judge's instructions respecting malice, considered in
the context of the entire charge, neither relieved the Commonwealth
of its burden of proof nor invaded the province of the jury. [624-625]
At a murder trial the judge's unobjected-to instructions to the jury regard-
ing a possible verdict of manslaughter if the defendant acted upon
"great provocation" created no substantial risk of a miscarriage of jus-
tice. [625-626]
At a murder trial, where the defendant denied he had stabbed the victim
and advanced no claim of self-defense, there was no evidentiary basis
requiring a jury instruction on self-defense. [626-627]

INDICTMENT found and returned in the Superior Court on
May 17, 1978.

The case was tried before *McGuire*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Kathleen Donahue* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. The defendant Gerald M. Hill appeals from
his conviction of murder in the second degree on an indict-

ment charging him with murder comprehending murder in the first or second degree. Hill alleges error concerning (1) the decision to transfer his case from juvenile proceedings to adult proceedings; (2) the denial of his motion for a directed verdict;[1] and (3) the judge's instructions. Hill also requests that we exercise our power under G. L. c. 278, § 33E, to reduce the verdict to a lesser degree of guilt.[2] We conclude that there is no reversible error, and that the verdict of murder in the second degree is not "against the weight of the evidence considered in a large or nontechnical sense." *Commonwealth* v. *Bowman,* 373 Mass. 760, 765 (1977). We, therefore, affirm the conviction and decline to exercise our power under § 33E in favor of the defendant.

We summarize the facts. On October 22, 1977, Leo Murphy was fatally stabbed after having been beaten by four young men. The victim was standing on a street in Boston, smoking a pipe when three of the four men walked by him. As the fourth young man, Michael Davis, passed the victim, ashes from the victim's pipe landed on Davis, and an argument ensued. The three other men came back to aid Davis.

The four young men punched and kicked Murphy until he fell to the ground. At some point the victim threw a bottle at one of his attackers. Two of the men started to leave. The other two tried to follow them, but Murphy grabbed one of them by the ankle. The young man struggled to free himself from Murphy's grasp, and then called to his friends for assistance. Davis, the man closest to the young man being held, tried to loosen Murphy's grip but was unable to free his friend. The young man next pulled a knife from his pocket and stabbed Murphy twice — once in the heart and

---

[1] The case was tried before the effective date of Mass. R. Crim. P. 25, 378 Mass. 896 (1979), which denominates such a motion as a Motion For a Required Finding of Not Guilty.

[2] Although Hill's conviction is for murder in the second degree, the homicide occurred before July 1, 1979. Hence, he is entitled to review under G. L. c. 278, § 33E. See *Commonwealth* v. *Davis,* 380 Mass. 1, 16 (1980).

once in the stomach. Davis and one of the other young men saw Hill with a knife.

A witness saw the young man being held by Murphy inflict the fatal wounds. She could not identify the perpetrator. However, she described the culprit as small, thin, with sandy colored hair, and the "lightest skinned" of the four men. This description fit Hill.

Hill said that Murphy held him (Hill) by the legs, and that he called for help from his friends. When the others returned to aid him, Murphy let go of Hill's legs and all four men left. The defendant admitted he kicked the victim in an effort to free his leg from Murphy's grasp, but denied that he had a knife or that he stabbed Murphy.

1. *Decision to transfer.* The defendant asserts that his treatment as an adult through transfer of this case to the Superior Court was improper.[3] He claims that overwhelming evidence in the Juvenile Court demonstrated his amenability to rehabilitation, and, therefore, he should have been treated as a juvenile.[4] G. L. c. 119, § 61. We do not agree.

Hill does not argue that he did not present "a significant danger to the public." G. L. c. 119, § 61. At the time of the transfer hearing, Hill had been arrested, and had been held as an adult after a probable cause hearing on an unrelated murder.[5] Rather, Hill claims that despite his danger to the public, the overwhelming evidence shows that he is amenable to treatment as a juvenile.

---

[3] The defendant was apparently unable to locate the findings of the judge of the Juvenile Court. The Commonwealth located the findings and has included them in its brief. Thus, we do not reach Hill's claim that the judge's failure to make written findings on transfer requires dismissal of the indictment.

[4] At the time of the offense, Hill was fourteen years, eleven and one-half months old. At the time of the transfer hearing, he was fifteen and one-half years old.

[5] Prior to the trial in this case, Hill pleaded guilty to murder in the second degree in the unrelated homicide. See *Commonwealth* v. *Smith,* 384 Mass. 519, 520 (1981). The sentences for both crimes are being served concurrently.

Relying on three reports to the Juvenile Court, Hill challenges the judge's conclusion that he was "not amenable to rehabilitation as a juvenile." G. L. c. 119, § 61. A psychiatrist's report states that Hill is "immature" and had shown "inappropriate, impulsive acting . . . out" of his feelings. "[B]y his own and [his] family's history," Hill has used "physical aggression towards others, when he felt he was justified in his own opinion." The report states that Hill should be placed in a "secure facility that would accept on admission his need for long-term (several years) treatment."

Other reports indicate that the Menninger Foundation in Topeka, Kansas, would provide Hill with a residential placement providing "psychiatric, psychological, educational and recreational services." Funding of $65,000 for Hill to spend a year at the Menninger Foundation was available from various sources.

From these reports, the judge of the Juvenile Court found that Hill's family history, psychological and social history demonstrated that Hill has "poor impulse control, and no remorse for his actions." The judge also determined that Hill "needs long term total security to protect himself and the general public." The judge concluded that "[t]here is no likelihood of any known treatment program that could even treat the defendant, let alone keep him secure — . . . especially given the brief period it would be available, given his age."

The record supports the judge's conclusions. It is clear that Hill required at least several years of care in a secure facility in order to protect the public and Hill. Since Hill would reach the age of seventeen approximately eighteen months after the transfer hearing, the judge could conclude that it was not possible to rehabilitate Hill within the time constraints of G. L. c. 119.

The judge's conclusion is in accord with the overwhelming evidence at the transfer hearing, and also with the fact that funding for Hill had been provided for one year only.

There was no error in the judge's decision to transfer Hill to adult proceedings.[6]

2. *Directed verdict.* At the close of the Commonwealth's case, the defendant moved for a directed verdict of acquittal.[7] The test is "whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged in [the] indictment." *Commonwealth* v. *Borans,* 379 Mass. 117, 134 (1979), quoting *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975). The Commonwealth must prove each element of the crime beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 364 (1970); *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979); and bring "minds of ordinary intelligence and sagacity to the persuasion of . . . [guilt] beyond a reasonable doubt." *Commonwealth* v. *Cooper,* 264 Mass. 368, 373 (1928).

Essentially, the defendant contends that the Commonwealth's evidence was "so inherently contradictory and had been so fully impeached that it was incredible as a matter of law.[8] This argument is without merit. Credibility is a

---

[6] "[I]t would have been better if the judge had made findings as to each of the five statutory factors, even if some of those findings indicated the inconclusiveness or nonexistence of some of the factors." *Two Juveniles* v. *Commonwealth,* 381 Mass. 736, 745 (1980).

[7] At trial, Hill limited his oral argument to directing a verdict on so much of the indictment as charged murder in the first degree. "Since the defendant was acquitted of murder in the first degree, he must demonstrate prejudice on the record in order to urge such a contention. The record here does not disclose any prejudice to the defendant from the submission of the first degree issues to the jury." *Commonwealth* v. *Amazeen,* 375 Mass. 73, 81 n.6 (1978). Moreover, based on our review of the record, we conclude that the judge was correct in submitting the facts to the jury on the issue of "deliberate premeditation." The victim was stabbed twice, and the path of the stab wound to the heart indicated that it had to be delivered with considerable force.

[8] The defendant contends that the testimony against him is "incredulous," and does not "ring true." Further, Hill claims that the evidence "is peppered with equivocations and inconsistencies." He also contends that "sheer incredulity . . . should attach to [one witness's] testimony" that the

question for the jury to decide. Once sufficient evidence is presented to warrant submission of the charges to the jury, it is for the jury alone to determine what weight will be accorded to the evidence." *Commonwealth* v. *Hoffer,* 375 Mass. 369, 377 (1978). The jurors "may accept or reject, in whole or in part, the testimony presented to them." *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 411 (1978). *Commonwealth* v. *Reid,* 384 Mass. 247, 257 (1981). Since the defendant challenges the sufficiency of the evidence only on the ground of its believability, there is no error in the denial of the defendant's motion for a directed verdict.

3. *Jury instructions on malice.* The defendant, relying on *Sandstrom* v. *Montana,* 442 U.S. 510 (1979), claims that the judge's instruction to the jury on the element of malice violated his constitutional rights. We note that at trial the main issue was the identity of the person who did the stabbing, and the issue of malice was not in dispute. See *Commonwealth* v. *Lee,* 383 Mass. 507 (1981). Even assuming that we should consider the issue, we conclude that there is no error.[9]

The defendant argues that the instructions that "[w]e determine [a person's] intent from what he does . . . from the acts that he performs," and that "malice is implied from any deliberate or cruel act against another, however sudden," relieved the Commonwealth "of its constitutional burden of showing, beyond a reasonable doubt, that the Defendant acted with the requisite intent." We do not agree.

In order to determine how a reasonable jury could have interpreted the jury instructions, *Sandstrom* v. *Montana,* 442 U.S. at 514, we read "the charge as a whole, and [do]

---

perpetrator of the crime was the "lightest skinned" of the four men beating the deceased because that witness was unable to see the perpetrator's face. See 621, *supra.*

[9] Since this case was tried before *Sandstrom* was decided, we consider the defendant's claim of error despite the absence of an objection. *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 278 (1982).

not . . . scrutiniz[e] bits and pieces removed from their context." *Commonwealth* v. *Cundriff,* 382 Mass. 137, 153 (1980), cert. denied, 451 U.S. 973 (1981). *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 278 (1982). *Lannon* v. *Commonwealth,* 379 Mass. 786, 791 (1980). The portion of the charge challenged by the defendant neither relieves the Commonwealth of its burden of proof, nor does it invade the fact-finding function of the jury. Cf. *Sandstrom* v. *Montana, supra* at 521-523.

Read as a whole, the charge is adequate. The judge correctly instructed the jury both on the presumption of innocence and the Commonwealth's burden of proof. The defendant does not quarrel with these general instructions. The malice instruction did not require the jury to find against the defendant on the element of intent.

4. *Jury instructions on voluntary manslaughter and self-defense.* The defendant claims error in the judge's charge on voluntary manslaughter and self-defense. No objection to the charge was made at trial. On appeal, there is no claim that the law was changed on these issues after Hill's trial.[10] "[T]he defendant's failure to request the appropriate instruction or to object specifically to the deficiency now argued as to the judge's charge precludes appellate review," *Commonwealth* v. *Fluker,* 377 Mass. 123, 131 (1979), unless there is a "substantial likelihood that a miscarriage of justice has occurred," *Commonwealth* v. *Tavares,* 385 Mass. 140, 148 (1982), quoting *Commonwealth* v. *Roberts,* 378 Mass. 116, 123 (1979).

Hill asserts that the manslaughter charge failed to place on the Commonwealth the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion,[11] and that the judge's "repeated use of superlatives"

---

[10] Appellate counsel was not trial counsel.

[11] As in *Commonwealth* v. *Fluker,* 377 Mass. 123, 130-131 (1979), "[w]e are not at all convinced that the evidence even raises the issue of heat of passion on sudden provocation." The defendant denies he stabbed the deceased (whether in the heat of passion or not) and claims that he merely kicked the victim in order to free his leg.

precluded the jury from returning a verdict of manslaughter.[12] Contrary to the defendant's argument, the judge instructed the jurors that the Commonwealth carries the burden of proving all essential elements of the crime. While it would have been preferable for the judge to state that the burden of proof was on the Commonwealth to show that the defendant did not act in the heat of passion on sudden provocation, we do not believe that his failure to do so requires us to conclude that there is a substantial likelihood of a miscarriage of justice.

On appeal, the defendant also argues that the judge should have instructed the jurors fully on self-defense.[13] In deciding whether a self-defense instruction is supported by the evidence, all reasonable inferences must be resolved in favor of the defendant. In this case there are no circumstances showing that the homicide was committed in self-defense and was therefore excusable, or that there were circumstances "which although they [did] not excuse or justify the act would mitigate the crime from murder to manslaughter." *Commonwealth* v. *Kendrick*, 351 Mass. 203, 210 (1966). Therefore, there was no evidentiary basis which required the judge to instruct the jurors on self-defense.

Further, the defendant denied that he was the person who did the stabbing. At trial he did not claim that he

---

[12] The defendant complains that the instruction that there must be "great provocation" to reduce a charge of murder to manslaughter diminished his chances of obtaining a verdict of manslaughter. This argument strikes us as an "afterthought," see *Commonwealth* v. *Starling*, 382 Mass. 423, 427 (1981), and we will not permit G. L. c. 278, § 33E, to be used to raise issues on appeal that should have been raised at trial. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 279-280 (1982). Read as a whole, the instructions on provocation, while sketchy, were passable.

[13] The judge mentioned self-defense only in conjunction with the defendant's testimony that he kicked the victim to free himself from the victim's grasp, and told the jurors that if they found that all that the defendant did was to kick the victim to free himself they could consider self-defense.

acted in self-defense or that he "feared . . . that he was in danger of being killed or [would suffer] grievous bodily harm at the hands of [the deceased]." Nor did he claim that he "had the right to use whatever means were reasonably necessary to avert the threatened harm." *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966). Thus, accepting the defendant's version of the facts, there was no error in the judge's determination not to instruct on self-defense.[14] "A trial judge is not required . . . to charge on an hypothesis which is not supported by evidence." *Commonwealth* v. *Costa*, 360 Mass. 177, 184 (1971).

5. *Relief pursuant to G. L. c. 278, § 33E.* The defendant requests that we exercise our power under § 33E, to reduce the murder conviction to manslaughter in the event that we reject his appeal on the specific issues raised. Consistent with our duty under § 33E, we have considered the entire case on the law and the evidence. We conclude that the interests of justice do not require the entry of a lesser degree of guilt than that found by the jury.

*Judgment affirmed.*

---

[14] Consistent with his strategy at trial, Hill did not request the judge to instruct the jurors on self-defense.