COMMONWEALTH *vs.* LUIS PEREZ.

Middlesex. April 5, 1983. — October 7, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Criminal,* Instructions to jury, Comment by judge. *Homicide. Joint Enterprise. Evidence,* Other offense. *Error,* Harmless.

At a murder trial the judge's instructions to the jury on joint enterprise, although concededly unnecessary in light of the evidential posture of the case, presented no reversible error, where the judge made clear that if the jury believed the defendant's testimony they were to find him not guilty. [312-315]

Certain comments made by the judge at a murder trial ordering defense counsel to take an unloaded rifle away from the defendant did not deprive the defendant of a fair trial. [315-316]

In the circumstances, there was no prejudicial error at the trial of a murder case in the prosecutor's cross-examination of the defendant concerning his activities as a dealer in drugs and as a person knowledgeable about stolen cars, and in the prosecutor's closing argument, in which he twice referred to the defendant as a "drug pusher." [316-319]

Although the judge at a murder trial in summarizing the evidence for the jury implied that, whereas a prosecution witness had nothing to gain by not telling the truth, the defendant did have a motive to lie, the judge's charge, considered as a whole, created no substantial risk of a miscarriage of justice. [319-321] O'CONNOR, J., dissenting.

In the circumstances of a murder trial, including overwhelming evidence that the homicide occurred in the course of an armed robbery, reversal of a first degree murder conviction was not required by the judge's unobjected-to reference to the penalty for murder in his instructions to the jury. [321-322]

INDICTMENTS found and returned in the Superior Court on June 18, 1971.

The cases were tried before *Robert Sullivan,* J.

*John F. Palmer* for the defendant.

*James W. Sahakian,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant appeals from convictions of murder in the first degree, armed robbery, arson, and larceny of a motor vehicle, rendered on January 23, 1973.[1] We find no reversible error. Accordingly, we affirm the judgments.

The Commonwealth presented evidence from which the jury could have found the following facts. The victim, Peter Kyriazopoulos (also known as Peter Poulos), was entertaining Judy Varoski, Maureen Donahue, and a man identified as "George," in the victim's apartment on April 21, 1971. During this visit, "George" took five one thousand dollar bills out of the victim's closet and flashed them in front of the women. George then attempted to kiss Maureen Donahue. The victim became angry and he and George left the apartment for about ten minutes. In this interlude, Varoski grabbed two of the bills from the closet and gave Maureen one of them. The next day, April 22, 1971, Varoski told her erstwhile paramour, Luis Alvarez, about the money. Knowing that his friend, the defendant, needed money, Alvarez mentioned to him that Varoski knew someone who had money. Alvarez, the defendant, and one Tony Mangula,[2] met Varoski, and they drove to the victim's apartment building. Discovering that the victim's car was not there, they drove to a bakery where Varoski believed the victim worked. Alvarez said he wanted to know what the victim looked like in case he was there when they broke in later that day. They were informed that the victim had been transferred to another bakery. The four drove back to

[1] Neither the defendant nor the Commonwealth attempted to explain the nine-year delay between the defendant's initial filing of a notice of appeal and the entry of the case in our docket. We note that the defendant filed motions for a new trial six days after he was sentenced, a second set of motions in January, 1974, and a third set of motions in October, 1977. In May, 1979, the defendant orally waived in open court the previous three sets of new trial motions and filed a fourth set of motions. After a hearing, the motion was denied on December 17, 1979. In November, 1981, a single justice of this court allowed the defendant to file a late claim of appeal from the denial of his fourth motion for a new trial, though he does not argue the denial in this appeal. The case was entered in our court in April, 1982.

[2] See *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785 (1975).

the victim's apartment building, and Varoski and Alvarez went inside so that Alvarez would know where the victim's apartment was located. When they emerged from the building, the defendant was pointing a gun at a window of the apartment and suggested that he shoot the locks off the window. After Alvarez reminded them that they were going to break in after dark, the defendant abandoned his more dramatic approach, and the four individuals left the area. The four then drove to a bakery in Chelmsford to find the victim, but he was not there. During the journey from Chelmsford to the defendant's home, the four individuals agreed to break into the victim's apartment and steal the money. Varoski's role in the scheme was to get the victim out of the apartment so that the three men would encounter no opposition during the burglary.

At approximately 4:30 P.M. the same day, Alvarez, Mangula, and the defendant met in a white automobile which the defendant drove. Fifteen minutes later they arrived at the victim's apartment building. Mangula waited in the car. Alvarez and the defendant entered the building. The defendant waited behind while Alvarez knocked on the victim's door. Two minutes later the victim opened the door, and the defendant, carrying a rifle, entered the apartment with Alvarez. When the victim attempted to pick up the telephone, Alvarez pulled the telephone cord out of the wall. Alvarez removed the money from the closet. At this point the victim, clad only in his shorts, made some kind of motion, and the defendant shot him once in the face and again in the head. Between the first and second shots Alvarez told the defendant that the money was fake. As Alvarez was leaving the apartment, he saw the defendant put the rifle to the victim's head. As he turned away, he heard a third shot.

Alvarez returned to the car with the money, and five minutes later the defendant emerged from the building. The defendant said, "The firemen will be here soon," and placed the rifle back in the car. Upon returning to the defendant's home, Alvarez got out of the white Ford and en-

tered the defendant's blue Ford Mustang. He followed the defendant, who stopped at a bridge and threw the rifle into a river. Alvarez then followed the defendant into a wooded area where the defendant set the white car afire.

The Lowell fire department extinguished a fire in the victim's apartment building and discovered the victim's body. The victim died as a result of the three gunshot wounds to his head. Alvarez was arrested and he directed the police to the places where the defendant had discarded the rifle and burned the car. The police discovered the burned car at a nearby garage, though there is no explanation in the record as to how the car was moved from the wooded area to the garage. They subsequently learned that it had been stolen.

The defendant presented evidence from which the jury could have found the following facts. The defendant on April 22, 1971, discussed with Varoski, Alvarez, and Mangula a plan to break into the victim's apartment while the victim was not at home, and steal the victim's money. The group then drove to the victim's apartment building. Varoski and Alvarez alighted from the car and entered the building. Because the victim was not at home, Varoski and Alvarez returned to the car, and the four individuals drove to a bakery where Varoski believed the victim was employed. However, the victim was not there, and they drove to a second bakery under the impression that the victim would be there. Again the victim was not found. At this stage, the group agreed to break into the victim's apartment at 5 P.M. that afternoon. The defendant testified that he never saw a rifle in the car. The group parted company, and Mangula took the defendant's car, a blue Mustang. The defendant ate lunch at a restaurant near his home and returned to his apartment at 2:30 P.M. Two hours later Mangula arrived at the defendant's apartment, alone. At approximately 4:50 P.M. Alvarez drove up to the defendant's apartment house in a white car. Alvarez told his two associates that he had just taken five one thousand dollar bills. Looking at the bills, the defendant laughed and told Alvarez that they were fake, to which Alvarez replied, "Well, I just killed a man for

that." The defendant said he did not believe Alvarez. The three men left the defendant's apartment. The defendant and Mangula entered the defendant's car and followed Alvarez who drove the white car. Alvarez drove the car into the woods, disappeared from sight, and returned on foot, rejoining the defendant and Mangula. The defendant never was in the victim's apartment, and he never saw the victim.

1. *Instructions to the jury.* The judge described in general the indictments against the defendant.

He then turned his attention to the murder indictment. With respect to murder in the first degree, he charged the jury on deliberate premeditation, extreme atrocity and cruelty, and felony-murder. He instructed the jury that armed robbery was a felony punishable by imprisonment for life. The judge defined second degree murder as an unlawful killing with malice aforethought. The judge carefully defined the term "malice aforethought." The judge then charged the jury on the joint enterprise and the felony-murder doctrines. The judge then instructed the jury on consciousness of guilt and summarized the evidence. He then stated the following: "The sole question, then, it appears, is, have you been convinced beyond a reasonable doubt to a moral certainty that Perez committed these crimes, either by himself or aided and abetted by Alvarez, as Alvarez says he was? If he did, if he was participating with Alvarez, Perez, on the theory of concert of action, must be found guilty. If you have a reasonable doubt that Perez participated in the commission of these crimes, you will, of course, acquit him." Later in the charge, the judge made reference to the dual issues of whether the defendant murdered the deceased or "did participate in the commission of the crime."

After the judge completed his charge, defense counsel took exception to the instructions on joint enterprise. Defense counsel requested that the judge instruct the jury that "although they [Alvarez, Varoski, Mangula, and the defendant] had plans to break and enter, if in fact Alvarez went there without Perez to break and enter and a murder ensued, that Perez would not be guilty of acting in concert

because he could have no knowledge that Alvarez was going there to do that act." The judge declined so to charge the jury. The defendant was convicted of murder in the first degree, armed robbery, arson, and larceny of a motor vehicle. On appeal he argues that the judge's instructions concerning joint enterprise presented to the jury an overly broad concept of criminal responsibility, which resulted in the possibility that he was convicted by a jury who were not adequately instructed on the law.

At the outset we point out that "we read 'the charge as a whole, and [do] not . . . scrutiniz[e] bits and pieces removed from their context.'" *Commonwealth* v. *Hill*, 387 Mass. 619, 624-625 (1982), quoting *Commonwealth* v. *Cundriff*, 382 Mass. 137, 153 (1980), cert. denied, 451 U.S. 973 (1981). *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 278 (1982). We are concerned with the over-all impact of the charge upon the jury. *Commonwealth* v. *Little*, 384 Mass. 262, 265 (1981). *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). Viewing the charge in this light we see no reversible error in it, though we concede that the instructions on joint criminal undertaking were probably unnecessary in light of the evidential posture of this case.

The theory presented to the jury by defense counsel was that the defendant agreed with his three associates to break and enter the victim's apartment while the victim was not at home and steal the victim's money, but that Alvarez went to the victim's apartment alone and killed the victim during the course of the armed robbery. On the other hand, the theory of the Commonwealth was that the defendant and his three confederates agreed to burglarize the victim's apartment and that the defendant, carrying a rifle, entered the victim's apartment with Alvarez, shot the victim three times while Alvarez grabbed the money, set the building afire, and destroyed the car which he had stolen. The Commonwealth presented no evidence tending to prove that Alvarez shot the victim while the defendant assisted in the perpetration of the robbery.

On the state of the record, the jury could have believed that the defendant was present at the scene of the crime,

shot the victim, set the apartment afire, and stole a car *or* that the defendant was not present at all. If the former is true, the defendant could properly be convicted on all four indictments; if the latter is true, the defendant could not be convicted of any crime for which he had been indicted. While it is true that the jury may believe part of a witness's testimony and reject part or believe all or reject all, the jury's right to selective credibility does not permit it to distort or mutilate any integral portion of the testimony to permit them to believe an unfounded hypothesis. See *Commonwealth* v. *McInerney*, 373 Mass. 136, 144 (1977), and cases cited.

Thus, the charge on joint enterprise was not warranted by the evidence. This error was not prejudicial, however, because the judge recounted in detail the defendant's testimony that he had not been involved in the robbery.

Defense counsel compounded the problem not only by failing to request the judge to strike that portion of his charge dealing with joint enterprise as being unnecessary, but by insisting on a clarification of the doctrine of joint criminal enterprise. The record fails to disclose the filing of any requests for instructions by the defendant before the charge was given. See Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979).

The defendant fails to acknowledge that in part of the jury instructions the judge made clear that Perez testified that he did not in any way participate in the crimes, although he had at one time intended to rob the victim. In this regard, the judge's charge was fair and accurate.[3] Fur-

---

[3] The relevant portion of the charge is as follows: "What then is the posture of this case with regard to the instructions of law which I have already given to you? It is the posture of this case that the defendant Perez said that although he intended to participate in the robbery, that he in fact did not, and that in fact he was at a restaurant or at home when the robbery and murder occurred; and that he never saw the gun, the rifle, which has been introduced into evidence; and that in short he played no role in the robbery or the killing of Poulos other than to participate in the preliminary view of the premises where the murder took place, and to participate in some visits to bakery shops on the morning of April 22; and that then at about five o'clock Alvarez told him of the robbery and the murder, and that he then drove behind Alvarez to a place where the latter

ther in the charge, the judge made clear that if Perez's testimony was believed, he was not guilty, whereas if Alvarez's account of the crime was believed, Perez was as guilty as Alvarez. There was no error.

2. *Judge's admonition of defense counsel.* During the defendant's direct testimony, defense counsel asked the defendant whether he recognized the rifle which the prosecution claimed was the murder weapon. Defense counsel handed the rifle to the defendant. The following colloquy took place:

THE JUDGE: "What is this performance? What are you giving him the gun for? Take it away from him. What kind of a performance do you call that? Put that gun down there."

COUNSEL FOR THE DEFENDANT: "If your Honor please, I am asking him to look —"

THE JUDGE: "Put that gun down there, please. Now go ahead with your questions."

At this point, defense counsel resumed direct examination of his client; the judge offered no explanation of the incident. Defense counsel did not object to the judge's action. The defendant argues that he was prejudiced by the judge's action because the jury was left with the impression that the defendant, in the eyes of the judge, was a dangerous person, not to be trusted with an unloaded rifle. We find no prejudicial error.

Because the defendant did not object to the judge's action, we would normally consider the argument only pursuant to our review under G. L. c. 278, § 33E. See *Commonwealth v. Tyree*, 387 Mass. 191, 214 (1982). However, "[i]n light of the delicate problem that objections to a judge's actions present to defense counsel, we do not weigh heavily against the defendant the absence of" an objection. *Commonwealth*

disposed of the white car, so-called. That is the position of the defendant in this case with additional facts which you have heard. And to this testimony of the defendant you shall give weight, if any, as you see fit. You are entitled to weigh this evidence, this testimony of the defendant, and you are entitled, of course, in weighing the testimony of the defendant, to consider, if you see fit, the interest of the defendant in the outcome of the case which is before you."

v. *Fitzgerald,* 380 Mass. 840, 849 (1980). Accordingly, we treat the issue as if an objection had been made.

A trial judge is responsible for controlling the trial, maintaining order in the courtroom, and guarding against improper conduct of counsel. See *Commonwealth* v. *Haley,* 363 Mass. 513, 518-519 (1973), citing Lummus, The Trial Judge 19-21 (1937). Viewed in the context of the entire trial, the incident was clearly a proper assumption of that responsibility and does not require reversal. See, e.g., *Commonwealth* v. *Sylvester,* 388 Mass. 749, 751-752 (1983). We view the judge's action as an uncompromising, yet mild admonition and an isolated incident.[4] See *Commonwealth* v. *Fitzgerald, supra* at 847-849. See also *Commonwealth* v. *Davis,* 359 Mass. 758, 759 (1971) (no error in judge's refusal to allow defense counsel to handle pistol, clip, and cartridge, or in his comments regarding counsel's action).

3. *Cross-examination of the defendant.* The defendant argues that the judge erred in permitting the prosecutor to cross-examine the defendant concerning his activities as a dealer in drugs and as a person knowledgeable about stolen cars. The effect of this error, the defendant contends, was to paint a picture of the defendant as a nefarious character by the introduction of evidence of prior bad acts. Additionally, the defendant cites as prejudicial the prosecutor's reference to the defendant as a "dope pusher" and a dealer in stolen cars, in his closing argument. This, the defendant concludes, was highly prejudicial and requires us to order a new trial. We disagree.

"It is axiomatic that a defendant subjects himself to cross-examination when he chooses to testify on his own behalf." *Commonwealth* v. *Key,* 381 Mass. 19, 29 (1980), quoting *Commonwealth* v. *Hicks,* 375 Mass. 274, 278 (1978). The scope of that cross-examination lies within the sound discretion of the trial judge. *Commonwealth* v. *Turner,* 371 Mass. 803, 811 (1977). Although, generally, the Common-

---

[4] We note that during his charge to the jury, the judge reminded the jurors that they should draw no inferences from any of his rulings or actions during the trial.

wealth may not introduce evidence of prior bad acts on the part of the defendant to prove the crime charged (*Commonwealth* v. *Green*, 302 Mass. 547, 552 [1939]) nor to impeach the defendant's credibility, except by introduction of the record of conviction (G. L. c. 233, § 21), evidence otherwise relevant to the crime charged is not rendered inadmissible merely because it tends to prove the commission of another crime or to cast the defendant in an unfavorable light. *Commonwealth* v. *Green, supra. United States* v. *Fortes*, 619 F.2d 108, 120 (1st Cir. 1980). Stated otherwise, the Commonwealth may introduce evidence of prior bad acts provided such evidence is relevant to the crime charged.

In the case before us, the defendant testified on direct examination that he knew Judy Varoski because he supplied her with heroin. He further testified on direct examination, that he, Varoski, Mangula, and Alvarez discussed breaking into the victim's apartment to steal money. According to the defendant's testimony, Alvarez shot the victim, and the defendant was not present at that time. He also testified that he went to New Hampshire the day after the crime in a car other than his Mustang. There was evidence that the defendant had told Alvarez before the incident that he had been "ripped off" and that he needed money. Finally, the defendant called Inspector James R. Donaghue of the Lowell police department who testified that he knew the defendant and that the defendant voluntarily turned in four rifles (for which he had permits) to the police about six months before the incident.

Defense counsel introduced the subject of the defendant's supplying drugs to Varoski. The prosecutor pursued the nature of the defendant's dealings in drugs. See *Commonwealth* v. *Key*, 381 Mass. 19, 28-29 (1980). Without objection, the prosecutor asked the defendant whether he "used to get the heroin for Judy Varoski," and the defendant admitted that he did supply her with heroin. Without objection, the prosecutor asked whether Judy Varoski paid for the heroin and the defendant conceded that she did pay him. Then the prosecutor asked: "You were a dealer in

drugs, weren't you?" Over defense counsel's objection, the defendant admitted that he was a dealer. Later in the cross-examination of the defendant, without objection, the defendant testified to going to the police station and giving thirty-six bags of heroin to the police. The cross-examination was long and vigorous (approximately forty pages of transcript), yet the prosecutor pursued the subject of the defendant's involvement in drug dealing with only two questions over objection of defense counsel. The questions should not have been asked; they should have been excluded, but in view of the entire cross-examination, any error in the admission of this testimony does not require reversal. In an argument which covers almost twenty pages of transcript, there are but two references (made approximately at the same time) to the defendant as a drug pusher and no objection was made. This is hardly prejudicial error of the kind which requires reversal.

Additionally because the defendant testified that he drove to New Hampshire in a car other than his Mustang, the prosecutor was entitled to pursue the subject to the point of eliciting the fact that the car he took to New Hampshire was a stolen car. Such evidence is admissible to show consciousness of guilt and "the intensity of [the defendant's] desire to get away." *Commonwealth* v. *Green*, 302 Mass. 547, 553 (1939). As such, it is not rendered incompetent because it tends to prove the commission of another crime. *Id.* at 552.

Finally, because the defendant called Inspector Donaghue who testified that he knew the defendant and that the defendant voluntarily had turned in four rifles to the police at some time before the incident, the prosecutor was entitled to pursue the nature of their relationship to the extent of eliciting the fact that the defendant had assisted Inspector Donaghue with respect to stolen car investigations. This evidence was admissible to assist the jury in evaluating the defendant's contentions that he was cooperative with the police and that he did not steal the car he took to New Hampshire. Cf. *Commonwealth* v. *Durkin*, 257 Mass. 426, 427-428 (1926).

In short, we find no abuse of discretion by the judge. See *Commonwealth* v. *Key, supra.* Nor do we find any reversible errors in the prosecutor's closing argument. Compare *Commonwealth* v. *Smith,* 387 Mass. 900 (1983).

4. *Judge's summary of the evidence.* The defendant argues that the judge's summation of the evidence was phrased in such a way as to indicate to the jury that the judge believed Alvarez's testimony and disbelieved the defendant's testimony. Specifically, the defendant points to that portion of the charge in which the judge briefly summarized the defendant's theory and marshaled, in great detail, the prosecution's evidence. The defendant additionally points to that portion of the charge in which the judge implied that although Alvarez had nothing to gain by not telling the truth, the defendant did have a motive to give false testimony.

The role of a trial judge is to instruct the jury on the applicable law. A judge may state the evidence and discuss possible inferences to be drawn therefrom. *Commonwealth* v. *Sneed,* 376 Mass. 867, 870 (1978). See *Cahalane* v. *Poust,* 333 Mass. 689, 693 (1956) (judge has discretion in deciding to which parts of the evidence he should refer). However, a judge may not directly or indirectly express an opinion as to the credibility of particular witnesses. *Commonwealth* v. *Sneed, supra.* That is a matter within the exclusive province of the jury. *Commonwealth* v. *Barry,* 9 Allen 276, 278 (1864). We have noted that a "comprehensively strong" charge creates an obvious risk of placing the weight of the judge's opinion on the scales against the defendant. *Commonwealth* v. *McColl,* 375 Mass. 316, 321 (1978). However, a judge is authorized to sum up the evidence and state its effect upon the issues involved. *Commonwealth* v. *Barry, supra* at 278-279.

Though the record reveals numerous objections to the charge, the defendant did not object to this part of the instructions. Accordingly, we review the claim of error "only under our authority pursuant to G. L. c. 278, § 33E, and would reverse only on a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Richmond,* 379 Mass. 557, 562 (1980).

At the outset of the charge, the judge, in detail, explained to the jurors that they were the sole judges of truth, that "I cannot and shall not help you in determining where the truth lies." He warned them against speculating as to his opinion of the defendant's guilt or innocence. The judge also instructed the jury at length as to the factors that they could consider in evaluating the testimony of any witness. When he initially discussed the rule of "acting in concert," a subject to which he later referred when discussing the weight to be accorded Alvarez's testimony, the judge instructed the jury that "[t]his rule of law is material for your consideration for whatever weight you wish to give it, if any, in the case which is before you today." In prefacing his remarks concerning the prosecution's evidence, the judge noted that the jury "may weigh and give to it such weight, if any" as they thought it deserved. In discussing particularly the testimony of Alvarez, the judge thrice warned that the testimony should be given only such weight, if any, the jury saw fit to give it and he qualified his references to Alvarez's testimony by using the phrase "if believed" or an equivalent expression, no less than four times. Finally, it should be noted that the judge referred to the jury's duty to assess the weight of the evidence at least five other times during his charge.

In this context, the judge's singling out of some specific factors which the jury may consider appears to be nonprejudicial error. This is not a case where the judge clearly tipped his hand as to his belief in the defendant's guilt or a witness's credibility, or lack thereof. Compare *Commonwealth* v. *Sneed*, 376 Mass. 867, 870, 872 (1978). Nor is this a case where "the judge's comment amounted to an instruction as to the inference which the jury should draw". *Commonwealth* v. *Borges*, 2 Mass. App. Ct. 869, 870 (1974). Any inference the jury could make here concerning the judge's opinion would have to be made in disregard of the judge's strong statements that he could not and would not help them determine the truth, that the jury were not to speculate concerning his opinion, and that the jury were to give evidence only such weight as they saw fit. Further, the

judge's repeated and specific instructions concerning the jury's exclusive duty to determine weight go well beyond the isolated and generalized instruction found wanting as a cure in *Commonwealth* v. *Foran,* 110 Mass. 179, 180 (1872).

Furthermore, we may consider that the jury were likely on their own initiative and as matters of common sense to consider the factors mentioned by the judge. In each case, the factor mentioned by the judge was certainly an obvious factor to be weighed in assessing the credibility of the witness. We note again that the defendant made a number of specific objections to the charge but did not seem concerned that the judge might have placed his thumb upon the scale.

In sum, as we have said in earlier cases, we examine the charge in its entirety to determine its over-all impact on the jury. See *Commonwealth* v. *Ely,* 388 Mass. 69, 73 (1983). While it is not a model charge, we conclude that the judge did not impose on the jury his opinion of the witness's credibility. See *Commonwealth* v. *Therrien,* 371 Mass. 203, 207 (1976).

5. *Judge's reference to sentence for murder.* The judge instructed the jury that with respect to the murder indictment, they could return a verdict of not guilty, guilty of murder in the first degree, or guilty of murder in the second degree. He added, "I might say, reverting for a moment to the offense of murder, guilty of murder in the first degree, we no longer in the Commonwealth of Massachusetts have the death penalty, as you are all well aware. Guilt of murder in the first degree carries with it the sentence of life imprisonment, a mandatory sentence. The same is true of guilty of murder in the second degree." The defendant did not object to that portion of the charge. He now argues that this reference to the sentence for a conviction of murder was reversible error.

The defendant contends that the judge, by referring to the life sentences for first or second degree murder convictions, and by not advising the jury that a second degree murder conviction carries with it parole eligibility within fifteen years of conviction, conveyed to the jury the idea that

there was no practical difference between first and second degree murder. The result, according to the defendant was to "reduc[e] the jurors' appreciation of the significance of their deliberation and verdict." We disagree.

Because the defendant failed to object to this portion of the charge, we will review the issue under G. L. c. 278, § 33E, "mindful of the principle that while we may examine errors not brought to the judge's attention under the above section [§ 33] we will only reverse on a showing of grave prejudice." *Commonwealth* v. *Burnett,* 371 Mass. 13, 16 (1976). "We have long held that the sentencing consequences of a verdict may not be submitted to the jury because the jury's function is to reach a verdict based solely on the evidence presented to them considered in light of the judge's charge to them concerning the applicable legal standards." *Commonwealth* v. *Ferreira,* 373 Mass. 116, 124 (1977). *Commonwealth* v. *Smallwood,* 379 Mass. 878, 882 (1980).

Although we agree that there was error, we conclude that the error does not require reversal. First, the defendant did not object, and he has not demonstrated "grave prejudice." Second, the judge's intent was to clarify any confusion in the jurors' minds concerning the relative severity of sentences for armed robbery and murder.[5] Third, the evidence presented by the Commonwealth overwhelmingly demonstrated that the homicide occurred in the course of an armed robbery and this is murder in the first degree. See *Commonwealth* v. *Dickerson,* 372 Mass. 783, 796 (1977). There is no ground for reversal.

6. *Review under G. L. c. 278, § 33E.* We have reviewed the entire record and we see no reason to alter the verdict or order a new trial under the power which is given to us in G. L. c. 278, § 33E.

*Judgments affirmed.*

---

[5] The judge instructed the jury that armed robbery was punishable by life imprisonment. See G. L. c. 265, §§ 1, 17.

O'CONNOR, J. (dissenting).  The defendant's convictions depended on the jury's believing Alvarez, and the jury could not have believed both Alvarez and the defendant.  Therefore, a comparison of their credibility was critical.  The judge's instructions must be evaluated in that context.  I believe that the effect of the jury charge "was to throw the weight of the judge's opinion [as to the relative credibility of Alvarez and the defendant] in the scales against the defendant," *Commonwealth* v. *Foran*, 110 Mass. 179, 180 (1872), and that this was error which created a substantial likelihood of a miscarriage of justice, requiring a new trial.

After summarizing the defendant's testimony, the judge instructed the jury that in weighing his testimony they were entitled to consider his interest in the outcome of the case.  Then, after summarizing Alvarez's testimony, the judge charged the jury that in weighing his testimony the jury could consider the fact that Alvarez inculpated himself as well as the defendant, that Alvarez told the court that he was aware that he was inculpating himself, and that when this was done Alvarez had counsel.  The clear import of these instructions was that the defendant's testimony was self-serving, and therefore entitled to little weight, but that Alvarez's testimony was not self-serving but rather was against his own interest, and therefore was worthy of belief.

The instruction was erroneous for two reasons.  First, determination of the credibility of witnesses is within the exclusive province of the jury, and must not be encumbered by the possible influence of the judge's opinion.  *Commonwealth* v. *Sneed*, 376 Mass. 867, 870, 872 (1978).  *Commonwealth* v. *Barry*, 9 Allen 276, 278-279 (1864).  See G. L. c. 231, § 81.  Second, the implication that Alvarez's testimony was against his interest was misleading because it suggested, without evidentiary support, and perhaps contrary to fact, that he had nothing to gain by it.  See *Commonwealth* v. *Barry*, *supra* at 277, 278.  Alvarez had been indicted for murder in the first degree, armed robbery, arson, and larceny of a motor vehicle in connection with the events to which he testified.  At the time of the defendant's trial,

those indictments were still pending. Disposition of Alvarez's case had been continued repeatedly during the months prior to the defendant's trial. Alvarez may well have believed that his own conviction was likely and that assisting the Commonwealth would bring its reward. If Alvarez did gamble on earning the Commonwealth's favor, it would appear that he won. A week after the defendant was convicted, Alvarez appeared before the judge who presided over the defendant's trial and pleaded guilty to murder in the second degree, armed robbery, arson, and larceny of a motor vehicle. The judge sentenced Alvarez to concurrent sentences of seven to twenty years on the indictments for armed robbery and arson. Despite the mandate of G. L. c. 265, § 2, that second degree murder be punished by imprisonment for life, the judge sentenced Alvarez to a six-year term of probation on the indictment for murder, the term to take effect at the expiration of the sentence imposed on the armed robbery indictment. The judge placed the indictment for larceny of a motor vehicle on file.

I agree with the court's statement that "we examine the charge in its entirety to determine its over-all impact on the jury." *Supra* at 321. I do not agree, however, that statements in a jury charge indicating the judge's opinion of the credibility of particular witnesses, or direct or indirect misstatements of a witness's motivation in testifying, are corrected by general statements, no matter how many times repeated, that the jurors are the sole judges of the facts and that it is for them to decide what weight will be given to the evidence. This is the holding of *Commonwealth v. Foran, supra* at 180. We cannot fairly assume that as a result of being told that it is for them to decide what witnesses are to be believed, jurors can be relied on to ignore the judge's proffered opinion as to the facts.

In my opinion, the jury instructions were erroneous because they were misleading as to a matter that was relevant to Alvarez's credibility and because the exclusive province of the jury to find facts was invaded by the judge. Because Alvarez's credibility was critical to the convictions, I believe

that there is a substantial likelihood that a miscarriage of justice has occurred.  G. L. c. 278, § 33E.  Accordingly, I would reverse the convictions and order a new trial.