JEANNETTE F. EASTMAN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 17, 1908. — January 5, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Witness,* Cross-examination, Impeachment.    *Evidence,* Remoteness.

The extent to which the cross-examination of a witness shall be permitted to be carried is within the discretion of the presiding judge, and in its exercise the judge may exclude questions addressed to a plaintiff on cross-examination relating to matters whose connection with the issues on trial is too attenuated and remote for consideration.

In this Commonwealth it is settled law that, in the introduction of evidence affecting generally the credibility of a witness, the inquiry is limited to the reputation of the witness for truth and veracity, and, therefore, after a witness for a defendant has testified that he knows the reputation of the plaintiff for truth and veracity and that it is bad, it is proper for the presiding judge to refuse to allow the defendant to ask the witness whether he would believe the plaintiff under oath.

TORT for personal injuries from an alleged assault and battery by a conductor of the defendant in grabbing and wrenching the plaintiff's arm.    Writ dated August 29, 1906.

At the trial in the Superior Court before *Lawton,* J., the jury returned a verdict for the plaintiff in the sum of $700; and the defendant alleged exceptions, relating only to the exclusion by

the judge of two questions asked by the defendant, one upon the cross-examination of the plaintiff and the other upon the direct examination of one McGarr, an inspector of police, called as a witness by the defendant. The questions excluded are stated in the opinion.

The case was submitted on briefs.

*F. F. Collier,* for the defendant.

*C. A. McDonough,* for the plaintiff.

MORTON, J. The injury for which the plaintiff sought to recover was to her arm. In the course of her cross-examination by the defendant it appeared that the plaintiff was married nine years, that her husband was dead, and that she had been a widow eleven years. It also appeared that menstruation came on immediately after the accident, about a week " ahead of time." Thereupon she was asked this question, " Have you ever had any miscarriages since you were married? . . . I mean during your marriage." The question was excluded and the defendant excepted. It is enough to say that its exclusion was plainly within the discretion of the presiding judge as to the extent to which the cross-examination should be permitted to go. It was possible of course that there might be a connection between the injured arm and premature menstruation and miscarriages which occurred from eleven to twenty years before the accident. But, if there was, it was too attenuated and remote for consideration.

The defendant was allowed to ask a witness called by it whether he knew what the reputation of the plaintiff for truth and veracity was, and, upon his answering that he did, to ask him what it was, and the witness replied that it was bad. Thereupon the defendant asked the witness, " Would you believe her under oath?" On the plaintiff's objection the question was excluded and the defendant excepted. Whatever may be the rule in England and in some other jurisdictions in this country, we regard it as settled in this Commonwealth that in the introduction of evidence affecting generally the credibility of a witness, the inquiry is limited to his reputation for truth and veracity. *Wetherbee* v. *Norris,* 103 Mass. 565. *Commonwealth* v. *Lawler,* 12 Allen, 585. *Quinsigamond Bank* v. *Hobbs,* 11 Gray, 250, 257. *Commonwealth* v. *Moore,* 3 Pick. 194, 196. This rule it is said in 30 Am. & Eng. Encyc. of Law, (2d ed.) 1075,

" is well supported by authority as well as reason," and a large number of cases is cited. See also *Teese* v. *Huntingdon,* 23 How. 2; 1 Greenl. Ev. § 461.

*Exceptions overruled.*