COMMONWEALTH vs. ROBERT HIGHTOWER, JR.

Suffolk. December 4, 1986. — June 15, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Evidence*, Consciousness of guilt, Credibility of witness. *Witness*, Impeachment.

At the trial of indictments, reversible error appeared in the admission of evidence, as proof of consciousness of guilt, that the defendant had been defaulted on a previous trial date, where it was not shown that the defendant's nonappearance was motivated by his choice to avoid trial. [269-270]

A new trial was required in a criminal case where the prosecutor improperly argued that, because the defendant failed to appear on a previous trial date and thus caused his surety, his sister, to forfeit the bail she had posted for him, the defendant displayed bad character and was unworthy of belief. [270-271]

INDICTMENTS found and returned in the Superior Court Department on November 15, 1982.

The cases were tried before *George N. Hurd, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*Daniel P. Napolitano*, Assistant District Attorney (*Gary Schubert*, Assistant District Attorney, with him) for the Commonwealth.

O'CONNOR, J. After a jury trial, the defendant was convicted of armed robbery, possession of a firearm with the identification number removed while in the commission of a felony, and unlawfully carrying a firearm under his control in a motor vehicle. The defendant appealed, and we transferred the case to this court on our own motion. On appeal, the defendant contends that the trial judge erred in (1) admitting in evidence, as proof of consciousness of guilt, that the defendant had been defaulted for failure to appear in court on a date previously scheduled for trial, and (2) permitting the prosecutor to argue

to the jury that the defendant displayed bad character, and thus lack of credibility as a witness, by not appearing for trial on the scheduled date, thereby causing the defendant's sister to lose money she had provided for the defendant's bail. We agree with both of the defendant's contentions. We reverse the convictions.

The charges against the defendant arose from his alleged participation in a robbery of one Clement Ferris. Ferris testified substantially as follows. On September 30, 1982, at approximately 2 A.M., he was confronted by two men while walking home on Beacon Street in Boston. One of the men, the defendant, pointed a gun at Ferris's face and said, "give it up." When Ferris responded that he did not have anything, the other man stepped up to him, placed an object which made a "clicking noise" against his stomach, and asked, "What do you mean you don't have anything?" Ferris then put his hands in the air and said, "Take whatever you want." The assailants proceeded to extract the victim's wallet and address book before continuing down the street.

Thereafter, according to Ferris's testimony, he approached a taxicab parked nearby and asked the driver whether he had observed two men walk by. The driver replied that he had, and Ferris explained that he had just been robbed. As he was speaking, Ferris noticed the two men get into a yellow automobile some distance down Beacon Street. The taxicab driver followed the automobile and obtained its license plate number. When the driver returned, he and Ferris found a police officer, reported the incident, and described the assailants, their automobile, and the automobile's license plate number. Shortly thereafter, the defendant and the other man were apprehended.

The defendant testified that, on the night of the incident, he and two friends had driven to the Beacon Hill area of Boston to purchase some cocaine. One of the men remained in the automobile while the defendant and one Spears unsuccessfully attempted to purchase the cocaine. As the two men were returning to the automobile, Spears robbed Ferris. The defendant testified that, although he watched the robbery occur, he did not participate in any way and had no notice that it would occur.

On cross-examination of the defendant, the prosecutor elicited the defendant's testimony, over his objection, that in October, 1983, approximately one year prior to trial, the defendant had appeared in court several times in connection with this case, and that on one occasion the defendant had accompanied his lawyer from the first session to another court room. The prosecutor then asked, "And do you recall receiving instructions from the clerk there that the case would be called the following week for trial?" The defendant answered, "I remember him saying it would be the following day." The defendant further testified that he appeared at court on the following day, and that he appeared "a couple of times that week," but after that he did not "come back" until he was arrested more than one year later. The defendant agreed with the prosecutor that he had defaulted on about October 24, 1983. The judge then instructed the jury relative to evidence of consciousness of guilt in accordance with the advice given in *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). The judge repeated similar instructions in his final charge to the jury.

Although there was evidence that the defendant failed to appear for trial on the assigned date, there was no evidence that he had correct information about what that date was. Therefore, his nonappearance was not shown to have been motivated by a choice to avoid trial. For that reason alone, the defendant's failure to appear and the resulting default had no tendency to show consciousness of guilt. Therefore, those events were irrelevant to the question of guilt, and evidence concerning them should not have been admitted.

Because the Commonwealth did not produce evidence that the defendant knew the scheduled trial date and nevertheless failed to appear, the evidence of the defendant's default is not admissible at retrial. We need not decide in this case whether, and in what circumstances, a defendant's failure to appear for trial on a known assigned date, standing alone, might be evidence of consciousness of guilt. Courts have reached different results as to whether a defendant's unexplained failure to appear on a known date, standing alone, should be admissible as consciousness of guilt. Compare, e.g., *State* v. *Cobb*, 22 Wash.

App. 221, 224-225 (1978), with *Commonwealth* v. *Babbs*, 346 Pa. Super. 498, 502 (1985).

The testimony of the victim concerning whether the defendant participated in the robbery contradicted that of the defendant. It cannot rightly be said, therefore, that the disputed evidence and the consequent instructions to the jury about the effect that the jury can give to evidence of consciousness of guilt did not harm the defendant. Therefore, the judgments must be reversed.

There is a second reason to reverse the judgments. While cross-examining the defendant with respect to the default, the defendant having objected, the prosecutor also elicited testimony regarding the resulting loss to the defendant's sister of the bail money she had provided. In his closing argument, the prosecutor said, "Mr. Hightower has come in and told you a story and I would ask you to weigh that story in determining whether he is telling the truth. And there are certain things that you can tell about Mr. Hightower and his character I suggest you ought to think about when you weigh his story. I think you ought to think about them well and closely. I am not talking about a record. I am talking about something else that is more important. That since he has admitted in a way lying in this case, not in so many words, but in a very real way.

"What are those two important things you know of already? He didn't come to court because every defendant makes in a sense a promise to come to court, and a bail is a surety for that promise you make. And since he promised he was going to come to court and he didn't do it, he would like you to believe that he went on a bender for a year, or a week and it turned out to be a year. He didn't come here voluntarily, he was arrested.

"What else do you know about his character and his person? I suggest you think about who is out money as a result of this case. . . . I suggest to you the person who had money in this case, ironically, the only person is his sister, who put up the bail. And I suggest to you, do you think Mr. Hightower promised his sister, you put up $1,000 for me and I will see you later? Or do you think he told her, I am coming to court. Use your common sense.

"So, I suggest to you there is something very important that you know about Mr. Hightower's character already, and that you are to consider before you start giving this man much credence at all." During the course of those remarks, defense counsel objected and the judge overruled the objection. By that argument, the prosecutor sought to impeach the defendant as a witness. But, we have held many times that evidence of prior bad acts, such as lying, is not admissible to impeach a witness. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 573 (1985); *Commonwealth* v. *Clifford*, 374 Mass. 293, 305 (1978); *Commonwealth* v. *Turner*, 371 Mass. 803, 810 (1977); *Eastman* v. *Boston Elevated Ry.*, 200 Mass. 412, 413 (1909). The rule applies regardless of whether the witness is a party. *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 755 (1961). The prosecutor's argument should not have been allowed, and we cannot say that the error was harmless. The verdicts must be set aside, the judgments reversed, and the cases remanded to the Superior Court for a new trial.

*So ordered.*