COMMONWEALTH *vs.* JOHN D. McCLENDON.

No. 93-P-1543.

Berkshire. June 5, 1995. - August 18, 1995.

Present: WARNER, C.J., SMITH, & FLANNERY, JJ.

*Homicide. Practice, Criminal,* Required finding, Instructions to jury. *Evidence,* Consciousness of guilt, Cross-examination, Credibility of witness. *Defense of Others.*

At a murder trial there was sufficient evidence from which a jury could find that the defendant murdered the victim. [124-125]

At a murder trial the evidence did not support the theory that the defendant had acted in defense of another and the judge correctly refused to instruct the jury on that theory. [125-126]

At a criminal trial, the prosecutor was entitled to impeach the defendant with respect to the subject of his military record opened on direct examination and the introduction of evidence of the defendant's unspecified "problems" in the military created no substantial risk of a miscarriage of justice. [127-129]

At the trial of a murder, case, the judge incorrectly ruled admissible evidence, raised for the first time on cross-examination of the defendant, of the defendant's prior bad acts, where such evidence did not tend to disprove anything the defendant had testified to on direct; where it was not properly admissible to impeach the defendant's credibility; where it did not establish a distinctive pattern of conduct identifying the defendant; and where it was not probative on the issue whether the killing was accidental: where the evidence created unfair prejudice by portraying the defendant as a violent, aggressive drunk who tended to commit unprovoked attacks when under the influence of alcohol, the defendant was entitled to a new trial. [129-132]

INDICTMENT found and returned in the Superior Court Department on September 26, 1991.

The case was tried before *William W. Simons,* J.

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Eric Neyman,* Assistant District Attorney, for the Commonwealth.

WARNER, C.J. A jury convicted the defendant of murder in the second degree. In this appeal, he contends that the trial judge improperly (1) denied his motion for a required finding of not guilty; (2) failed to instruct the jury on defense of another; and (3) admitted evidence of his temperament while intoxicated and prior misconduct. Because we decide that the evidence of temper and prior misconduct was erroneously admitted and unduly prejudicial, we reverse and remand for a new trial.

There was evidence from which the jury could have found the following facts. On the evening of June 7, 1980, the defendant left the bar at the Allen Hotel in Pittsfield with his close friend Howard Simpson and the victim John Clifford, who offered to give them a ride home. Along the way, Clifford and Simpson began arguing about Clifford's homosexual advances toward Simpson, who was admittedly gay. Sometime after the argument ended, Clifford pulled off and parked on the side of Potter Mountain Road. The defendant left the car and walked down the road, leaving Simpson alone with Clifford. Once alone, Clifford began to molest Simpson and "paw at" him. Simpson resisted to an extent, but was overcome by Clifford who was a larger, stronger man. Simpson then left the car and walked down the road, leaving Clifford in the car by himself.

On the morning of June 8, 1980, Clifford's body was discovered, covered with blood and slumped inside the car against the driver's side door. Blood tests confirmed that blood from the victim's clothing and from the driver's compartment was type A, while blood from the passenger's side was type B. Of the three passengers admittedly in the car on the night of the murder, only the defendant had type B blood. The coroner's examination of the body determined that the cause of death was manual strangulation. The doctor testified that in order to effect death by such a method, the murderer had to be a person of some strength who was capable of applying substantial force for a sustained period of time. In 1980, the defendant was a young, strong man while Simpson was an older, frail, debilitated alcoholic. The

defendant testified that he did not believe Simpson was capable of killing Clifford, and did not believe Simpson killed Clifford.

In response to police questioning in July of 1980, the defendant denied knowing the victim in any way. In subsequent questioning in 1990, however, he stated that he recognized pictures of Clifford and ultimately admitted that he did know the victim. The defendant also initially denied riding with the victim and Simpson and could not recall any events of the evening of June 7, 1980. Subsequently, he admitted to the police that he did ride with Clifford and Simpson to Potter Mountain Road on that night recalling the events as they occurred leading up to the murder, and even retraced the route for police. The defendant denied killing Clifford, but stated that he could not recall any other events that occurred in the car that evening, and that if he had killed Clifford, it was an accident.

1. *Denial of required finding.* Taking the evidence in a light most favorable to the Commonwealth, *Commonwealth v. Ruci*, 409 Mass. 94, 96 (1991), there was sufficient evidence from which a jury could find beyond a reasonable doubt that the defendant murdered the victim. See *Commonwealth v. Latimore*, 378 Mass. 671, 676 (1979). The defendant admitted driving with the victim to Potter Mountain Road on June 7, 1980, and also directed the police without any prompting to the area where Clifford's car and body were discovered. At approximately 10:45 P.M., another driver passed Clifford's car parked on Potter Mountain Road, but neither heard nor saw anyone in the vehicle. The jury could infer that the reason the driver could not see anything was because Clifford was already dead and slumped down in the front seat. The jury could reasonably conclude that the murder occurred between the time the three left the bar and 10:45 P.M. when the driver passed by, the window of time when the defendant admittedly was with Clifford. Thus, the defendant was one of the last people to see Clifford near the time and place he was found strangled. See *Commonwealth v. Montecalvo*, 367 Mass. 46, 55 (1975). In addition, the fact

that test results revealed type B blood in the vehicle, infer-
ably resulting from a struggle between Clifford and the mur-
derer, and that the defendant was the only person in the car
that night with type B blood, pointed to the defendant as the
murderer. Moreover, the jury could reasonably conclude that
between Simpson and the defendant, who were admittedly
with the victim near the time of the murder, only the young,
strong defendant and not the aged, frail Simpson was physi-
cally capable of inflicting death by manual strangulation as
described by the medical examiner. Finally, the defendant's
false statements and inconsistent stories to police about
knowing and riding with the victim on the night of the mur-
der is evidence of consciousness of guilt, see *Commonwealth
v. Basch*, 386 Mass. 620, 624-625 (1982), which the jury
could consider with the other evidence presented to establish
the guilt of the defendant. See *Commonwealth v. Oeun Lam*,
420 Mass. 615, 618 (1995), citing *Commonwealth v. Epsom*,
399 Mass. 254, 259 (1987). See also *Commonwealth v.
Montecalvo*, 367 Mass. at 55.

2. *Instruction on defense of another.* The defendant re-
quested, but was denied, an instruction on defense of another
based on the theory that the defendant was justified in killing
Clifford for the protection of his friend Simpson who was the
focus of "unwanted homosexual advances" by Clifford. A
judge must instruct on defense of another where the evidence
viewed in a light most favorable to the defendant supports
the theory that "(a) a reasonable person in the actor's posi-
tion would believe his intervention to be necessary for the
protection of the third person, and (b) in the circumstances
as that reasonable person would believe them to be, the third
person would be justified in using such force to protect him-
self." *Commonwealth v. Martin*, 369 Mass. 640, 644, 649
(1976).

The evidence in this case does not support the theory that
the defendant acted in defense of Simpson against Clifford.
First, the defendant could not have reasonably believed
Simpson to be in physical danger before Clifford stopped the
car on Potter Mountain Road. The defendant himself char-

acterized the interaction between Simpson and Clifford as merely an argument or loud conversation about homosexual activities rather than threats of physical injury by Clifford.

Second, since defense of another tracks the elements of self-defense, see *Commonwealth* v. *Colantonio*, 31 Mass. App. Ct. 299, 307 (1991), the use of physical force to protect a third party, like self-defense, is only justified when it is in response to immediate or imminent danger to the third person. See *Commonwealth* v. *Amaral*, 389 Mass. 184, 189 (1983). See also *Commonwealth* v. *Martin*, 369 Mass. at 649. In this case, the defendant did not intervene during the argument between Clifford and Simpson. There was no evidence that the defendant perceived Simpson to be in immediate danger of physical injury at any point in the trip. The defendant had left the car before any physical approach by Clifford toward Simpson. Any return to the car and use of force by the defendant against Clifford would have been retributive rather than protective. See *Commonwealth* v. *Amaral*, 389 Mass. at 189. See also *Commonwealth* v. *Clark*, 20 Mass. App. Ct. 392, 397 (1985). The judge was correct in refusing to instruct on a theory not supported by the evidence. *Commonwealth* v. *Paton*, 31 Mass. App. Ct. 460, 464 (1991).

3. *Admission of character evidence.* The defendant testified in his own defense. In addition to explaining his memory of the events of June 7, 1980, under direct examination the defendant testified about his personal background, including his service in the United States Marine Corps, from which he said he received an honorable discharge. In regards to his drinking in the summer of 1980, the defendant testified that "from time to time I would drink too much," and that he was "probably inebriated" on the night of the murder.

The prosecutor initiated cross-examination with a question concerning the defendant's discharge from the Marines, eliciting that, although honorable, the discharge occurred before his enlistment expired because of unspecified "problems." There was no objection. This was followed with a question concerning the defendant's temper when drinking which

brought an objection.[1] The judge overruled the objection, and
the defendant denied having such a temper. The prosecutor
continued questioning about the defendant's inability to con-
trol his temper and actions stemming from his temper when
drinking. A side bar conference ensued during which defense
counsel objected to the line of questioning as improper char-
acter evidence. The judge ruled that the testimony was ad-
missible, and the prosecutor, over objection, continued with
the questioning concerning the defendant's temper when
drinking in the past and an incident in which the defendant,
while intoxicated, attempted to strangle his stepmother.[2]

The long-standing rule is that "the prosecution may not
introduce evidence that a defendant previously has misbe-
haved, indictably or not, for the purposes of showing his bad
character or propensity to commit the crime charged, but

---

[1] Q: "And back then [1980] you had a temper, particularly when you
were drinking, didn't you?"

[2] Q: "Mr. McClendon, let me ask you again, wouldn't it be fair to say, at
times when you've been drinking, you've had occasion to lose your
temper?"
A: "I'd say it would be fair to say, rarely."
Q: "But you have; correct?"
A: "Yes."
Q: "And you've gotten violent; correct?"
A: "I wouldn't describe it as violent."
Q: "Would you call grabbing somebody around the throat being
violent?"
COUNSEL: "Objection."
COURT: "Overruled. It depends on how hard you grab him, I suppose."
Q: "Well, choking to where they have trouble breathing, wouldn't that
be violent?"
A: "Yes."
Q: "And you have done that before when you've been drinking, haven't
you?"
COUNSEL: "Objection."
COURT: "Overruled."
A: "Not to the point where they can't breathe, no."
Q: "Didn't you do that to your own stepmother, Mrs. Denley?"
COUNSEL: "Objection."
COURT: "Overruled."
A: "Yes, I did."
Q: "And that was just one year before the death of John Clifford;
correct?"
A: "Correct."

such evidence may be admissible if relevant for some other purpose." *Commonwealth v. Helfant,* 398 Mass. 214, 224 (1986). Such other relevant purposes include intent, knowledge, state of mind, identity, motive, pattern of conduct, common scheme, or absence of mistake or accident. *Ibid.* If it is determined that the evidence of other misconduct has probative value, the trial judge in his discretion must decide if such evidence is admissible by determining whether its probative value outweighs the risk of undue prejudice. See *Commonwealth v. Young,* 382 Mass. 448, 462-463 (1981); *Commonwealth v. Robertson,* 408 Mass. 747, 750 (1990); *Commonwealth v. Fleury-Ehrhart,* 20 Mass. App. Ct. 429, 430-431 (1985).

The prosecutor was entitled to pursue the circumstances surrounding the defendant's discharge from the Marines and impeach the implication that the discharge was completely free of trouble once the defendant specifically opened up the subject of his military record on direct examination. See *Commonwealth v. Key,* 381 Mass. 19, 28-29 (1980). Contrast *Commonwealth v. Parker,* 12 Mass. App. Ct. 955, 956 (1981). But see *Commonwealth v. Grammo,* 8 Mass. App. Ct. 447, 455-456 (1979). Once the defendant takes the stand in his own defense, he is subject to complete cross-examination, the scope of which lies within the sound discretion of the trial judge. *Commonwealth v. Key,* 381 Mass. at 28-29. See also *Commonwealth v. Makarewicz,* 333 Mass. 575, 593 (1956), and cases cited; *Commonwealth v. Fleury-Ehrhart,* 20 Mass. App. Ct. at 434. Unlike the situation in *Commonwealth v. Triplett,* 398 Mass. 561, 563-564 (1986), the evidence that the defendant had problems with his military career disproves his direct testimony, or inferences that a jury could have drawn therefrom, that the termination of service was routine. See *Commonwealth v. Jacobs,* 6 Mass. App. Ct. 867, 868 (1978). There was no abuse of discretion in allowing the question, and the decision of the trial judge is final. *Commonwealth v. Fleury-Ehrhart,* 20 Mass. App. Ct. at 434. In any event, since there was no objection to the question, we cannot say that the introduction of evidence of the

defendant's unspecified "problems" in the military created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). See also *Commonwealth* v. *Salone*, 26 Mass. App. Ct. 926, 928 (1988).

The admissibility of the evidence of the defendant's bad temper when drinking and the prior bad act of attempted strangulation of his stepmother while he was intoxicated is more tenuous. Because defense counsel objected to this testimony, we review to determine whether the trial judge abused his discretion in ruling the evidence to be relevant, and we will not disturb the judge's decision to admit the evidence absent "palpable error." See *Commonwealth* v. *Scott*, 408 Mass. 811, 819 (1990); *Commonwealth* v. *Ridge*, 37 Mass. App. Ct. 943, 946 (1994).

The Commonwealth cannot claim that the purpose of admitting the evidence was to impeach the defendant's credibility concerning his denial that he had a temper when drinking. The prosecutor, not the defendant, first raised the subject of the defendant's violent behavior when drinking during his cross-examination. Contrast *Commonwealth* v. *Key*, 381 Mass. at 28-29; *Commonwealth* v. *Perez*, 390 Mass. 308, 316-319 (1983). Contrary to the Commonwealth's argument, the defendant's testimony on direct examination that he was drunk on the night of the murder did not raise any inference about his demeanor and did not open up the topics of his temper when drinking or the prior attempted strangulation. Thus, the initial inquiry about the defendant's temper which spawned the follow-up question was not a proper line of cross-examination from the start because the initial question did not tend to disprove anything that the defendant had testified to on direct examination. See *Commonwealth* v. *Triplett*, 398 Mass. at 564. See also *Commonwealth* v. *Parker*, 12 Mass. App. Ct. at 956.

Even though the defendant opened himself up to complete cross-examination by taking the stand, the prosecution was not entitled to impeach his credibility by attacking his character by way of prior bad acts. See *Commonwealth* v. *Can-*

*cel*, 394 Mass. 567, 572-573 (1985); *Commonwealth* v. *Hightower*, 400 Mass. 267, 271 (1987); *Commonwealth* v. *Andrews*, 403 Mass. 441, 459 (1988); *Commonwealth* v. *Arthur*, 31 Mass. App. Ct. 178, 180 (1991). See also Liacos, Massachusetts Evidence § 6.9.3, at 318-319 (6th ed. 1994), and cases collected. The rule applies where the witness is the defendant. See *Commonwealth* v. *Hightower*, 400 Mass. at 271. Here, the prosecutor sought to impeach the defendant's credibility as a witness with evidence of both specific instances of bad temper and the prior strangulation. Such topics were not sufficiently opened up on direct examination. Contrast *Commonwealth* v. *Key*, 381 Mass. at 28-29; *Commonwealth* v. *Perez*, 390 Mass. at 316-319. The trial judge erred in allowing such evidence for the purpose of attacking the credibility of the defendant as a witness.

The Commonwealth also argues on appeal that evidence of the defendant's temper while drinking and prior attempted strangulation was admissible for the purpose of establishing a pattern of conduct in order to identify the defendant as the murderer. We are not persuaded. "[E]vidence of prior bad acts is not admissible to prove identity unless there is a special mark or distinctiveness in the way the acts were committed (i.e., in the modus operandi)." *Commonwealth* v. *Jackson*, 417 Mass. 830, 836 (1994) (citations omitted). "There must be a uniqueness of technique, a distinctiveness, or a particularly distinguishing pattern of conduct common to the current and former incidents to warrant the admission of evidence of prior bad acts as tending to prove that the defendant was the person who committed the crime charged." *Ibid.*, quoting from *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 505-506 (1990).

The evidence that the defendant drank, became violent and attempted to strangle someone was not a particularly distinguishing pattern of conduct that it was "so unusual and distinctive as to be like a signature." *Commonwealth* v. *Cordle*, 404 Mass. 733, 747 (1989) (Liacos, J., dissenting), *S.C.*, 412 Mass. 172 (1992), quoting from McCormick, Evidence § 190, at 559 (3d ed. 1984). See *Commonwealth* v. *Jackson*,

417 Mass. at 836. There was no evidence to show that the circumstances surrounding the incident with his stepmother and those involved with the murder were in any way similar, apart from the fact that the defendant had been drinking immediately prior to both occurrences and that both were supposedly unprovoked attacks. See *Commonwealth* v. *Cordle, supra* at 747-748. See also *Commonwealth* v. *Key,* 21 Mass. App. Ct. 293, 297 (1985). In addition, there was no evidence to show the nature of the defendant's relationship with his stepmother, the context in which the attack occurred, or other events surrounding the attempted choking of his stepmother. "If we were to uphold the admission of the evidence of prior bad acts in this case, we would be endorsing a rule that evidence of prior assaults by a person is admissible in the trial of every future assault charge against that person, provided that there is a general, although less than unique or distinct, similarity between the incidents. Such a rule would be unfair to defendants and inconsistent with our well-established law on the use of evidence of prior bad acts to prove identity." *Commonwealth* v. *Brusgulis,* 406 Mass. at 507.

The Commonwealth's final argument is that the evidence of the prior strangulation attempt when the defendant was intoxicated serves the purpose of showing an absence of accident. The defendant injected the issue of an accidental killing into the trial by testifying that he told police that he did not remember killing the victim, but if he had it was an accident. Evidence that the defendant reacted in the same manner under similar circumstances is probative on the issue of lack of accident or inadvertence. See *Commonwealth* v. *Campbell,* 371 Mass. 40, 42-43 (1976); *Commonwealth* v. *Fleury-Ehrhart,* 20 Mass. App. Ct. at 431 n.2. See also *Commonwealth* v. *Harvey,* 397 Mass. 803, 809-810 (1986). As discussed above, however, the similarities between the attempted strangulation of the stepmother and the murder were not adequately developed beyond the link to alcohol consumption. "When a prior criminal act is relied upon to prove intent or knowledge, similarity between the two events must be shown to establish the threshold requirement of rele-

vance." *Commonwealth* v. *Harvey*, 397 Mass. at 809, quoting from *United States* v. *Hernandez-Miranda*, 601 F.2d 1104, 1108 (9th Cir. 1979). We are unable to discern any legitimate purpose for admitting the evidence of the defendant's violent demeanor when drinking and prior misconduct linked to his temper. We conclude that the evidence created unfair prejudice to the defendant by portraying him as a violent, aggressive drunk who tended to commit unprovoked attacks when under the influence of alcohol. See *Commonwealth* v. *Triplett*, 398 Mass. at 563; *Commonwealth* v. *Salone*, 26 Mass. App. Ct. at 929. The theory of the Commonwealth's case was that the defendant, who was drunk, became enraged by witnessing the homosexual advances toward his close friend and as a result murdered Clifford. In essence, the prosecutor sought to show that the defendant got drunk and became violently enraged just as he had done on prior occasions. The prosecutor highlighted the defendant's temper in his closing argument: "The only role that alcohol plays in this [case] is it brought out that temper which caused [the defendant] to do this and to do it in that manner." We conclude that the evidence of the defendant's temper when drunk and his prior attempted strangulation of his stepmother was of the type that "diverts the attention of the jury from the [crime] immediately before it; and, by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him." *Commonwealth* v. *Triplett*, 398 Mass. at 563, quoting from *Commonwealth* v. *Jackson*, 132 Mass. 16, 20-21 (1882). The improper character evidence was unduly prejudicial. See *Commonwealth* v. *Triplett*, 398 Mass. at 564; *Commonwealth* v. *Salone*, 26 Mass. App. Ct. at 929.

*Judgment reversed.*
*Verdict set aside.*