The defendant was convicted of trafficking in cocaine (G. L. c. 94C, § 32E[h][2]), and doing so within 1,000 feet of a school (G. L. c. 94C, § 32J). On appeal he raises two evidentiary points and a suppression of evidence issue.
During the execution of a search warrant at the defendant’s house, Officer Philip Tarpey recovered certain “personal papers” from the defendant’s bureau drawer. When they were offered in evidence, the defendant made a general objection on the ground that the documents were not relevant. At a sidebar conference, the judge indicated (a) the objection would be sustained as to two pieces of paper that might constitute a “ledger,” until a proper foundation was laid; and (b) certain unspecified documents to which no objection was made would be admitted. Thereafter, the prosecutor displayed two pieces *885 of paper to Tarpey, and Tarpey testified that they possibly contained names and dollar amounts “that are owed to the person involved in trafficking the cocaine or amounts that are owed to other people.” These records were admitted in evidence without objection by the defendant.
The second evidentiary point arose during cross-examination of the defendant. The prosecutor showed the defendant certain documents that were in his house on November 23, 1996 (the date the search warrant for his house was executed) — two blank social security cards, a blank New York State driver’s license, a New Jersey operator’s license, and a blank New York birth certificate. Some of the documents had “raised seals.” When the defendant was asked to explain why the documents were in his house he answered, “If they were in the house, they were there.” A moment later he said, “I have no use for them. As I said, I had my own identification.” When asked again why he would have these documents in his house, the defendant objected that they had nothing to do with drugs, but the objection was overruled. The defendant then testified that if they were in his house, they “must be mine,” and that he just “happen[ed] to have them.”
1. The ledger sheets. On appeal the defendant argues that admission of the ledger sheets created a substantial risk of a miscarriage of justice because there was an inadequate foundation for their admission in evidence, and the notations on the documents were, according to the defendant, inconsistent with the activities of a street-level drug dealer such as himself.
The last point is easily disposed of, as it goes to the weight of the evidence, a matter wholly within the province of the jury. See Commonwealth v. Best, 50 Mass. App. Ct. 722, 728 (2001). Although it is unclear from the record upon what basis the papers were admitted, they were relevant to whether the defendant conducted a drug dealing operation from his residence. Officer Tarpey’s testimony, noted above, was sufficient to lay an adequate foundation for admission of the ledger sheets. The papers constituted a link in the chain of proof to the trafficking charge. See Commonwealth v. Gordon, 407 Mass. 340, 351 (1990); Commonwealth v. Good, 409 Mass. 612, 621 (1991). In a legion of unlawful drug distribution cases, these so-called “cuff-sheets” have been admitted to prove intent to distribute. See, e.g., Commonwealth v. Sabetti, 411 Mass. 770, 779 (1992); Commonwealth v. Pallotta, 36 Mass. App. Ct. 669, 670 (1994); Commonwealth v. Berg, 37 Mass. App. Ct. 200, 201 n.1 (1994). There was no substantial risk of a miscarriage of justice in the admission of the ledger sheets.[1]
2. The blank documents. As for the blank documents, they were admitted over the defendant’s objection. All of these items were seized from the defendant’s house during the execution of the search warrant. They do suggest a propensity to commit crimes, e.g., create false identities unrelated to cocaine charges. This evidence was different not only in form, but in substance, from the ledger sheets. Although the Commonwealth’s express purpose in offering the evidence was to impeach the defendant’s testimony that he did not conduct *886 drug sales from his apartment, the evidence lacked any “rational link” to the charges. Commonwealth v. Trapp, 396 Mass. 202, 207 (1985). Nothing in the defendant’s direct testimony, which inspired the Commonwealth’s use of these documents for impeachment, justified their admission. See Commonwealth v. McClendon, 39 Mass. App. Ct. 122, 129-130 (1995). The evidence “did not tend to disprove anything that the defendant had testified to on direct examination.” Id. at 129. It only emphasized his behavior as a “scofflaw” and impugned his character by way of bad acts. See Commonwealth v. Perez, 390 Mass. 308, 316, 318 (1983); Commonwealth v. Trapp, 396 Mass. at 205. See also Liacos, Massachusetts Evidence § 6.10.3 (7th ed. 1999).
On the evidence presented, however, we think that the erroneous admission of these documents was not prejudicial and constituted harmless error. See Commonwealth v. Vinnie, 428 Mass. 161, 163, cert, denied, 525 U.S. 1007 (1998). The proof of the defendant’s guilt was strong. The testimony of an informant, who posed as a customer of the defendant and conducted a controlled buy of cocaine from him inside his apartment, went unchallenged.
In addition, there was corroborative evidence consisting of $281 in cash seized from the living room several feet from a couch where the defendant reclined during the search. A balance scale and contraband materials were also recovered. With the exception of the erroneously admitted blank documents, all of the evidence pointed to a drug dealing operation.
3. The suppression issue. Briefly, the evidence presented on the motion to suppress was as follows: the police entered a “breezeway,” perhaps more appropriately described as an enclosed porch, which was furnished and used as a family room. They opened the unlocked door to the porch without knocking or announcing their presence, and then proceeded to the kitchen door, which they found about one-third ajar. Officer Efantis knocked on this door, saying, “Nicky, it’s the Springfield Police Department.” There was no response. He knocked again and called out, “Nicky, it’s the Springfield Police, it’s Jim Efantis. We have a search warrant for your house.” The defendant told the police to come in. The defendant, as previously stated, was lying down in the living room. On appeal, the Commonwealth does not dispute the judge’s finding that the porch was part of the curtilage of the house. Compare Commonwealth v. Pietrass, 392 Mass. 892, 896, 899 n.11 (1984).
The judge found that there was a technical violation of the knock and announce rule here, but that the policies underlying the rale were not violated. They are: “decreasing the potential for violence, protection of privacy, and the prevention of unnecessary damage to homes.” Commonwealth v. Cundriff, 382 Mass. 137, 146 (1980), cert, denied, 451 U.S. 973 (1981). Here, there was no forced entry (one officer may have had his weapon drawn), no invasion of privacy (the police knew the defendant and he invited them in), and no property damage. The terms of the warrant were satisfied because the knock and announce rule’s objectives were substantially achieved. See Commonwealth v. Goggin, 412 Mass. 200, 203 (1992); Commonwealth v. Wornum, 421 Mass. 220, 222 (1995), cert, denied, 517 U.S. 1214 (1996). See also Commonwealth v. Antwine, 417 Mass. 637, 639 (1994) (discussing “useless gesture” exception to knock and announce rule).
Finally, the defendant claims that the police had no justification for a nighttime search. General Laws c. 276, § 2, authorizes such searches. The search warrant in the instant case specifically authorized a search in the nighttime *887 hours. The search took place about 1:15 a.m. “[TJhere is no particular statutory requirement applicable to an application for a nighttime warrant and no requirement that the magistrate state or identify the cause for issuing such a warrant.” Further, “[i]f the magistrate issues a warrant which can be executed in the nighttime, he is presumed to have had cause for doing so.” Commonwealth v. Garcia, 23 Mass. App. Ct. 259, 261 (1986), citing Commonwealth v. DiStefano, 22 Mass. App. Ct. 535, 541-543 (1986). See Commonwealth v. Grimshaw, 413 Mass. 73, 77 (1992).
Joseph S. Berman for the defendant.
Bethany C. Ix>we, Assistant District Attorney, for the Commonwealth.

Judgments affirmed.

We do not consider the defendant’s additional arguments, made in his letter to this court submitted pursuant to Mass.R.A.P. 16(1), as amended, 386 Mass. 1247 (1982), as the rule “does not authorize reargument in the disguise of a supplementary citation.” Reporters’ Notes to Mass.R.A.R 16(1), Mass. Ann. Laws, Rules of Appellate Procedure, at 64 (Lexis 2000).