## COMMONWEALTH *vs.* WILLIE GREEN.

No. 00-P-1201.

Suffolk. December 14, 2001. - July 5, 2002.

Present: RAPOZA, KAPLAN, & BERRY, JJ.

*Homicide. Defense of Others. Practice, Criminal,* Instructions to jury, Harmless error. *Error, Harmless.*

The judge at a murder trial erred in failing to instruct the jury on the theory of defense of another while agreeing to instruct on the theory of self-defense, where, in the circumstances of the case, it would be difficult to understand how the defendant could have justifiably used deadly force to defend himself, but would not have been justified in doing so for the protection of his friend; however, the error was not prejudicial, in that the jury rejected the defendant's self-defense argument, making it highly unlikely that they would have concluded that he was acting in defense of his friend even if they had been instructed on the theory of defense of another. [378-381]

At a murder trial, the judge did not err when, in giving supplemental instructions to the jury in response to questions regarding malice and excessive force, he declined to repeat that a defendant who acts reasonably and with appropriate force in self-defense is entitled to an acquittal on a murder charge, where the judge had correctly instructed on this point during the initial charge, and the jury are presumed to have understood and properly applied that charge. [381-383]

INDICTMENT found and returned in the Superior Court Department on March 18, 1998.

The case was tried before *Robert H. Bohn, Jr.,* J.

*Philip G. Cormier* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

RAPOZA, J. This case arises from an exchange of gunfire between the defendant and the victim, Lamont Jones, which left the defendant wounded and Jones dead. The defendant appeals from his conviction of voluntary manslaughter on an indictment

charging murder in the first degree,[1] citing two grounds: (1) that the evidence, taken in the light most favorable to the defendant, required an instruction to the jury on defense of another; and (2) that a reasonable jury could have wrongfully concluded from the trial judge's supplemental instructions that self-defense was only a mitigating factor to a murder charge, and not a complete defense. We affirm.

*Background.* The jury heard evidence from which they could have determined that the events leading to the death of Jones occurred in the following manner.

From the defendant's perspective, Jones was his enemy, and the two men had had several confrontations prior to the one that resulted in Jones's death.[2] There was evidence of a fistfight between the two, an incident in which the defendant had fired a gun at Jones during an argument, and another in which Jones had struck the defendant in the face with a portable cassette player and then chased him.

On the afternoon of January 10, 1998, the defendant visited the apartment of a friend, one Michael Burton, located on the third floor of 83 Hutchins Street in Boston. Although Burton had not heard any gunshots, the defendant told him that Jones had just fired a gun at him while he was in front of the apartment building.[3] The defendant spoke with Burton about his concern that his "beef" with Jones was "starting to heat up, starting to become serious." He also told Burton that he thought that Jones was at Traci Coplin's home, which was located nearby at 79 Hutchins Street.

The defendant spent the remainder of the afternoon at Burton's apartment. On one occasion Burton left the building and, when he returned, he observed the defendant and another man,

[1]The defendant was also convicted of illegal possession of a firearm, G. L. c. 269, § 10A, and illegal possession of ammunition, G. L. c. 269, § 10(*h*). He has not challenged either of those convictions in this appeal.

[2]Testimony at trial established that Jones was a large, muscular man about 6'4" tall and weighing around 250 pounds. The defendant was apparently significantly smaller. Several witnesses testified that Jones had a reputation for violence, and it was well known in the neighborhood that he had served time in prison.

[3]Tiffany Brown, who lived across the street from 83 Hutchins Street, reported that she had heard gunshots outside of her home that afternoon.

whom he knew as "Mike," in the front entryway. Burton saw Mike hand the defendant a .38 caliber gun, which the defendant then stuck in his waistband.

Following his receipt of the gun, the defendant returned to Burton's apartment and positioned himself on a couch so that he could look out a window that faced Hutchins Street. At one point, the defendant called Burton to the window and indicated that Burton's friend, Mark Roberts, was outside. Burton and the defendant went downstairs to see Roberts. As Burton walked out the front door of his apartment building, Roberts was across the street walking his dog. Burton then noticed another man coming toward him from the left, on the same side of the street as 83 Hutchins Street. Burton turned toward the approaching man, realized that it was Jones, and exclaimed, "Oh shit, there he is."[4] At that point, the defendant was standing behind Burton on the steps of the building. Burton had his right hand on the railing on the right side of the front steps and the defendant was behind him and to the left with his hand still on the handle of the open front door. Jones continued to approach Burton and the defendant, saying "What's up?" before pulling out a gun. Jones then opened fire, shooting at Burton and the defendant. The defendant, using the front door as a shield, returned fire with his own weapon from behind the door.[5] The defendant continued to shoot as he backed away from the doorway, and Burton, now inside the building, tried to pull the defendant into the entryway from behind. After Burton and the defendant had both gotten into the entryway of 83 Hutchins Street, Jones turned, took about three steps, and then collapsed face down on the sidewalk. He was pronounced dead a short time later at a local hospital.[6]

*Defense of another.* During the trial, the defendant requested jury instructions on the theories of both self-defense and defense

[4]Traci Coplin, a sometime girlfriend of Jones, testified at trial that Jones had been at her apartment for her daughter's birthday party and had left around 9:00 or 9:30 P.M., stating that he would be back in twenty minutes. She testified that she heard gunshots outside after he left.

[5]Jones fired eight or nine shots and the defendant fired between four and six.

[6]It was later determined that the defendant had suffered a gunshot wound to his right hip.

of another. The trial judge agreed to give the self-defense instruction but declined to instruct on defense of another. The defendant made a timely objection to the omission.

When either self-defense or defense of another has been sufficiently raised by the evidence, the defendant is entitled to an instruction that places on the Commonwealth the burden of disproving the particular defense beyond a reasonable doubt. See *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 687-688 (1976); *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978). "To the extent that [the] defendant may have been found to come to the defense of [another] (as well as to his own defense), the legal principles are not unlike those which control the use of self-defense because a person 'is justified in using force against another to protect a third person when (a) a reasonable person in the actor's position would believe his intervention to be necessary for the protection of the third person, and (b) in the circumstances as that reasonable person would believe them to be, the third person would be justified in using such force to protect himself.' " *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 748, 750-751 (1980), quoting from *Commonwealth* v. *Martin*, 369 Mass. 640, 649 (1976). See *Commonwealth* v. *McClendon*, 39 Mass. App. Ct. 122, 125 (1995).

In determining whether sufficient evidence of self-defense or defense of another exists, "all reasonable inferences should be resolved in favor of the defendant, and, no matter how incredible [the evidence, it] must be treated as true." *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998). Although not every defendant who uses force is subsequently entitled to a jury instruction on the Commonwealth's obligation to disprove self-defense, where there is evidence to support the claim, the instruction should be given. "Such evidence may fail to inspire belief. It may be incredible. However, it is the jury's function to assess the credibility of the evidence in light of correct principles of law as delivered to them by the trial judge if there is some evidential basis for the claim." *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. at 750 (citations omitted).

As the trial judge recognized, self-defense was clearly an issue in this case and the jury were instructed accordingly. The trial judge declined, however, to instruct on defense of another,

ruling that the evidence was insufficient to establish that Burton was the target, or exposed to any danger, at the time of the shooting. The position adopted by the trial judge is not supported by the evidence on this record.

It is difficult to understand how, in the circumstances of this case, the defendant could have justifiably used deadly force to defend himself, but would not have been justified in doing so for the protection of his friend, Burton. The jury could have inferred from the evidence that the unarmed Burton was in a more exposed position than the defendant when the shooting began and that Jones was shooting in the direction of both the defendant and Burton. Moreover, even if Burton was not the intended target, he was certainly in imminent danger of death or serious bodily harm, see *Commonwealth* v. *Pike*, 428 Mass. at 396, by virtue of his proximity to the defendant and position on the steps within range of Jones's weapon. The evidence, in the light most favorable to the defendant, *Commonwealth* v. *Maguire*, 375 Mass. at 769, was sufficient to support a reasonable belief on the part of a person in the defendant's position (1) that his intervention was necessary for the protection of Burton, and (2) that Burton would have been justified in using such force to protect himself. See *Commonwealth* v. *Martin*, 369 Mass. at 649; *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. at 751. See also *Commonwealth* v. *McClendon*, 39 Mass. App. Ct. 122, 125 (1995) ("A judge must instruct on defense of another where the evidence viewed in a light most favorable to the defendant supports the theory"). An instruction on defense of another should have been given.

It remains for us to determine whether the absence of such an instruction constituted prejudicial error. See *Commonwealth* v. *Mejia*, 407 Mass. 493, 497 (1990); *Commonwealth* v. *Martinez*, 37 Mass. App. Ct. 948, 951 (1994). At trial, the defendant vigorously argued that he acted in self-defense when he shot and killed Jones. He also argued to the jury that he was defending not only himself when he shot at Jones, but also his friend, Burton. The defendant was ultimately convicted of voluntary manslaughter, a verdict which indicates that the jury did not believe that he acted with the malice necessary to support a conviction for murder. However, the defendant's conviction for

manslaughter also indicates that the jury did not believe that his actions amounted to justifiable self-defense, because either (1) the defendant acted in self-defense but used excessive force; or (2) he did not act in self-defense but some mitigating circumstance was present, such as reasonable provocation or sudden combat, which eliminated the element of malice. The specific theory behind the jury's conclusion, however, is not relevant here. The critical point is that he would have been acquitted had the jury concluded that the defendant acted in self-defense and without excessive force.

In light of the jury's rejection of the defendant's self-defense argument, it is highly unlikely that they would have concluded that he was acting in defense of Burton even if they had been instructed on the subject of defense of another. The defendant and Burton were standing close to each other when the shooting occurred. The actions which the defendant undertook, arguably in his own defense, are the same actions that support his contention that he was acting in defense of another. As the jury failed to view the defendant's actions as justifiable for his own defense, there is no basis to conclude that the jury would have considered those same actions justified when undertaken for the defense of another in the same circumstances. Therefore, it can be said "with fair assurance. . . that the judgment was not substantially swayed" by the trial judge's erroneous refusal to instruct them on the defense of another. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 n. 7 (1999); *Commonwealth* v. *Rosado*, 428 Mass. 76, 79 (1998). There was no prejudicial error warranting reversal.[7]

*Supplemental instructions.* During the initial charge to the jury, the trial judge gave a thorough instruction on the subject of self-defense. He informed the jury that a killing committed in self-defense is not unlawful and that a conviction of either

---

[7]Even considering the trial judge's failure to instruct on defense of another to be error of constitutional dimension, in these circumstances we determine that the Commonwealth proved that the error was harmless beyond a reasonable doubt and "did not contribute to the verdict obtained." *Chapman* v. *California*, 386 U.S. 18, 24 (1967). See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163 (1998).

murder or manslaughter cannot stand unless the killing is found to be unlawful. The trial judge also explained that the Commonwealth bore the burden of proving that the defendant had not acted in self-defense and emphasized that a guilty verdict on either murder or manslaughter could not be returned unless the Commonwealth had satisfied that burden.

At the conclusion of the first day of deliberations, the jury asked the court for further instructions on the "legal definition of malice" and "voluntary manslaughter mitigating circumstances." The next morning the trial judge reinstructed the jury as to the elements of murder and manslaughter, reiterating two instructions regarding self-defense which had also been given in the main charge: (1) that a killing committed in self-defense, even if done with excessive force, does not establish the malice necessary to support a conviction for murder, and (2) that a killing committed in self-defense does not establish malice even if the defendant's belief that he needed to defend himself was objectively unreasonable. During these supplemental instructions the trial judge declined to repeat that a defendant who acts reasonably and with appropriate force in self-defense is entitled to an acquittal on a murder charge. The defendant objected to this omission.

It is true that a jury should be told that "self-defense and defense of another, if warranted by the circumstances and carried out properly, constitute a complete defense and not merely a mitigating circumstance." *Commonwealth* v. *Carlino*, 429 Mass. 692, 694 (1999). In this case that was done by the trial judge during the main charge, and the defendant acknowledges that the instruction on self-defense, given at that time, was correct and free of error. He argues, however, that the supplemental instructions did not contain a statement that self-defense is a complete defense that relieves the defendant of all criminal liability. Consequently, the defendant asserts, the jury could have concluded that self-defense is only a mitigating factor that reduces an offense from murder to manslaughter, rather than a complete defense relieving a defendant of any criminal liability for a killing.

Looking at the instructions in their entirety, as we are bound to do, *Commonwealth* v. *Mejia*, 407 Mass. at 495, and consider-

ing the specific questions asked by the jury, we discern no error. The jury inquired about the definition of malice and asked for further instruction on the topic of "voluntary manslaughter mitigating circumstances." They did not ask for information about what makes a killing either unlawful or justified and, as they were correctly instructed on those points during the initial charge, they are presumed to have understood and properly applied those concepts. *Commonwealth* v. *Robicheau*, 421 Mass. 176, 180 (1995). The trial judge correctly informed the jury that mitigating circumstances, such as the use of excessive force in self-defense, if present, will eliminate the element of malice and reduce a crime from murder to manslaughter. His instruction was appropriately responsive to the specific question asked by the jury relative to mitigating circumstances. It was clearly not the trial judge's purpose to reinstruct on self-defense as a complete defense to the crime of murder and it was not reversible error to rely upon his original instructions on self-defense, given during the main charge, to address that subject.[8] See *Commonwealth* v. *Sellon*, 380 Mass. 220, 233-234 (1980) (judge's additional instructions, "although delivered after a period of jury deliberation must be read in light of the entire charge" and "judge in giving further instructions is not required to repeat all aspects of his prior charge").

There was no error in the instructions given in response to the jury's questions on malice and excessive force. The original charge to the jury had made it clear that a killing done in self-defense is lawful, and it was not reversible error to fail to reiterate that point during the supplemental instructions. See *Commonwealth* v. *Barros*, 425 Mass. 572, 577 (1997) (judge not required to repeat instruction on intoxication in response to question on elements of malice); *Commonwealth* v. *Ward*, 426 Mass. 290, 298 (1997).

*Judgment affirmed.*

---

[8]As we have previously noted, the better practice is to remind the jury that the supplemental instructions are to be considered as a whole in conjunction with the main charge. See *Commonwealth* v. *Hicks*, 22 Mass. App. Ct. 139, 144-145 (1986). However, failure to do so does not constitute reversible error.